# EXHIBIT A



Judicial Links | eFiling | Help | Contact Us | Print                    Logon

**22AC-CC07354 - CAPITOL EYE CARE, ET AL V TEHUM CARE SERVICE ET A (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

Sort Date Entries: ● Descending ○ Ascending          Display Options: [ All Entries ]

---

**12/06/2022**     **Corporation Served**
Document ID - 22-SMCC-2645; Served To - CHS TX, INC.; Server - ; Served Date - 02-DEC-22; Served Time - 07:56:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - Summons served to CHS TX, INC C/O Intake. ter

**12/05/2022**     **Notice of Service**
22-SMCC-2645; Electronic Filing Certificate of Service. ter

**Corporation Served**
Document ID - 22-SMCC-2644; Served To - TEHUM CARE SERVICES, INC. D/B/A CORIZON HEALTH, INC.; Server - ; Served Date - 01-DEC-22; Served Time - 14:32:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - Summons served to Tehum Care Services INC D/B/A Corizon Health INC. C/O Intake Specialist. ter

**12/02/2022**     **Notice of Service**
22-SMCC-2644; Electronic Filing Certificate of Service. ter

**12/01/2022**     **Corporation Served**
Document ID - 22-SMCC-2646; Served To - MISSOURI DEPARTMENT OF CORRECTIONS; Server - COLE COUNTY SHERIFF; Served Date - 22-NOV-22; Served Time - 10:24:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - Summons served to MODOC C/O K. Eggen, Designee. ter

**11/29/2022**     **Note to Clerk eFiling**

**Notice of Service**
22AC-CC07354 MO DEPT. OF CORR RETURN; Electronic Filing Certificate of Service. ter

**11/17/2022**     **Summ Issd- Circ Pers Serv O/S**
Document ID: 22-SMOS-59, for YESCARE CORP.. Attorney to print two copies of service document created to issue for service and return. Service copy to include filings to serve, if applicable. ter

**Summons Issued-Circuit**
Document ID: 22-SMCC-2646, for MISSOURI DEPARTMENT OF CORRECTIONS. Attorney to print two copies of service document created to issue for service and return. Service copy to include filings to serve, if applicable. ter

**Summons Issued-Circuit**
Document ID: 22-SMCC-2645, for CHS TX, INC.. Attorney to print two copies of service document created to issue for service and return. Service copy to include filings to serve, if applicable. ter

**Summons Issued-Circuit**
Document ID: 22-SMCC-2644, for TEHUM CARE SERVICES, INC. D/B/A CORIZON HEALTH, INC.. Attorney to print two copies of service document created to issue for service and return. Service copy to include filings to serve, if applicable. ter

**11/14/2022**  **Filing Info Sheet eFiling**
**Filed By:** BLAKE I MARKUS

**Pet Filed in Circuit Ct**
Petition. ter
**Filed By:** BLAKE I MARKUS
**On Behalf Of:** CAPITOL EYE CARE, INC., JEFFERSON CITY ORAL AND MAXILLOFACIAL
SURGERY, LLC, CMMP SURGICAL CENTER LLC, MID MISSOURI ANESTHESIA CONSULTANTS

**Judge Assigned**

Electronically Filed - Cole Circuit - November 14, 2022 - 02:57 PM

**IN THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**

| | | |
|---|---|---|
| **CAPITOL EYE CARE, INC.,** | ) | |
| | ) | |
| **JEFFERSON CITY ORAL AND** | ) | |
| **MAXILLOFACIAL SURGERY, L.L.C.,** | ) | |
| | ) | |
| **CMMP SURGICAL CENTER, L.L.C.,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **MID-MISSOURI ANESTHESIA** | ) | |
| **CONSULTANTS, P.C.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| **TEHUM CARE SERVICES, INC. d/b/a** | ) | |
| **CORIZON HEALTH, INC.,** | ) | |
| | ) | |
| Serve: C T CORPORATION SYSTEM | ) | |
| 120 South Central Ave | ) | |
| Clayton, MO 63105 | ) | |
| | ) | |
| **CHS TX, INC.,** | ) | |
| | ) | |
| Serve: C T CORPORATION SYSTEM | ) | |
| 120 South Central Ave | ) | |
| Clayton, MO 63105 | ) | |
| | ) | |
| **YESCARE CORP.,** | ) | |
| | ) | |
| Serve: Sara Tirschwell | ) | |
| 3411 Yoakum Blvd. #2901 | ) | |
| Houston, TX 77006 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **STATE OF MISSOURI** | ) | |
| **DEPARTMENT OF CORRECTIONS,** | ) | |
| | ) | |
| Serve: Anne Precythe | ) | |
|      Director of the Missouri DOC | ) | |
|      2729 Plaza Drive | ) | |
|      Jefferson City, Missouri 65102 | ) | |

1

)

Defendants.                                                  )

## PETITION

Plaintiffs present the following claims on their behalf, as well as class action claims on behalf of similarly-situated healthcare providers against Defendants Tehum Care Services, Inc. d/b/a Corizon Health, Inc., CHS TX, Inc., YesCare Corp., and the State of Missouri – Department of Corrections.

### Introduction

Plaintiffs, and similarly situated healthcare providers (together, "Plaintiffs"), are Missouri healthcare providers who contracted with Corizon Health to provide healthcare services to inmates under control of the Missouri Department of Corrections. Corizon Health had a contract with the State of Missouri where it was to be paid for Plaintiffs' services. Corizon lost that contract with the State while it owed millions of dollars to Plaintiffs and other healthcare providers across the state. Instead of paying Plaintiffs and the other providers, Corizon left the State of Missouri and began engaging in a corporate shell game to fraudulently hide its assets and steal the money it owed to doctors, nurses, and Missouri residents who provided healthcare services to Missouri's inmates. This suit seeks to redress those wrongs.

### Parties

1.  Plaintiff Capitol Eye Care, Inc. is a Missouri corporation in good standing with the State of Missouri with a principal office in Cole County, Missouri.

2.  Plaintiff Jefferson City Oral and Maxillofacial Surgery, L.L.C. is a Missouri limited liability company in good standing with the State of Missouri with a principal office in Cole County, Missouri.

2

3.   Plaintiff CMMP Surgical Center, L.L.C. is a Missouri limited liability company in good standing with the State of Missouri with a principal office in Cole County, Missouri.

4.   Plaintiff Mid-Missouri Anesthesia Consultants, P.C. is a professional corporation in good standing with the State of Missouri with a principal office in Cole County, Missouri.

5.   Defendant State of Missouri, Department of Corrections (MDOC) is a state agency and department, which operates various facilities, including correctional facilities, within the State of Missouri.

6.   Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Corizon Health") is a Texas for-profit corporation formed on May 3, 2022 by a four-way merger of four entities (Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC) with its principal place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee. One of those entities, Corizon, LLC, was a Missouri limited liability company licensed and doing business in Missouri. As a result of the four-way merger, Corizon Health remained as the surviving entity and is liable for Corizon Health, Inc. and Corizon, LLC's contractual obligations, including Corizon Health, Inc. and Corizon LLC's contracts with Plaintiffs. Before transferring all of its active contracts to Defendant CHS TX, Inc. in May 2022, Corizon Health was engaged in the business of practicing medicine and providing correctional healthcare throughout the United States, including in the State of Missouri. Corizon Health's officers and directors include Chief Executive Officer Sara Tirschwell, Chief Financial Officer Jeff Sholey, Chief Legal Officer J. Scott King, Chief Medical Officer Gregory Ladele, Chairman David Gefner, Vice Chairman Abe Goldberger, Director Jay Leitner, and Director Isaac Lefkowitz.

7.   Defendant YesCare Corp. ("YesCare") is a Texas for-profit corporation formed on January 26, 2022, with its principal place of business at 205 Powell Place, Suite 104, Brentwood,

Tennessee. YesCare's organizer and director is Sara Tirschwell. YesCare's executive team includes, among others, Chief Executive Officer Sara Tirschwell, Chief Financial Officer Jeff Sholey, Chief Legal Officer J. Scott King, and Chief Medical Officer Gregory Ladele. Upon information and belief, David Gefner and Jay Leitner retain an ownership interest in YesCare, and Isaac Lefkowitz is likewise involved in YesCare's ownership and/or management.

8.  Defendant CHS TX, Inc. ("CHS TX") is a Texas for-profit corporation formed on May 3, 2022, with its principal place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee. CHS TX's organizer is Sara Tirschwell, and its directors are Sara Tirschwell and Jeff Sholey. CHS TX is a wholly-owned subsidiary of YesCare. On the date of its formation, CHS TX absorbed all or substantially all assets of Corizon Health, including all of Corizon Health's active contracts, employees, and management.

9.  The actions brought by Plaintiffs herein are to recover for themselves and all other Missouri healthcare providers similarly situated (the Class), all outstanding amounts due by Corizon for healthcare services provided to persons institutionalized with the State of Missouri, which it is obligated to pay.

**Jurisdiction and Venue**

10. Jurisdiction and venue are proper in this Court.

11. This Court has personal jurisdiction over Defendants Corizon Health, YesCare, and CHS TX pursuant to § 506.500(1), RSMo. and/or (2) because the claims alleged herein against Defendants arise from Defendants' (1) transaction of business within Missouri; (2) making of contracts within Missouri; and (3) commission of tortious acts within this state.

12. Further, this Court has personal jurisdiction over Defendants YesCare and CHS TX because both are alter-egos, successors, or mere continuations of Corizon Health. See LearSchmidt

Inv. Grp., LLC v. AB-Alpine SPE, LLC, No. 2:19-CV-04053-NKL, 2019 WL 2271169, at *2 (W.D. Mo. May 28, 2019).

13. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to Article V, § 14(a) of the Missouri Constitution.

14. This case is not removable to federal court because diversity jurisdiction under 28 U.S.C. § 1332(a) does not exist.

15. Venue is proper in this Court pursuant to § 508.010.4, RSMo. because Plaintiffs were first injured by the acts and conduct alleged herein in Cole County, Missouri.

16. The actions brought by Plaintiffs are by Missouri residents for actions taken within the state of Missouri, including tort claims.

## Class Allegations

17. Plaintiffs bring the Class action claims on behalf of themselves and all persons similarly situated pursuant to Missouri Rule of Civil Procedure 52.08.

18. Plaintiffs propose to represent all persons who meet the following definition (each member referred to herein as a "Class Member" and, collectively, all such members to be referred to as the "Class Members" or the "Class"); a Class Member is a person:

    a. Who was on the date Plaintiffs filed this petition, and has thereafter continuously remained through the date this Court certifies this action as a class action, a resident of Missouri;

    b. Who maintained a contractual relationship with Defendant Corizon Health for payment in exchange for providing healthcare services to MDOC inmates; and

    c. To whom Defendant Corizon Health did not make payment for provided healthcare services; and

5

   d.  To whom Defendant Corizon Health still owes payment for provided healthcare

      services.

19. Plaintiffs reserve the right to amend the foregoing class definition before this Court

determines whether certification is appropriate.

20. Excluded from the Class are (a) all Missouri state-court judges and members of their

families within the first degree of consanguinity, (b) officers, directors, and counsel of record for

any Defendant, and (c) any state.

21. Numerosity. The Class is so numerous that joinder of all Class Members is impracticable.

Plaintiffs are unable to allege at this time the exact number of Class Members; however, Plaintiffs

believe there are, at a minimum, hundreds of Class Members. Defendant records maintained in the

ordinary course of business will readily reveal the exact number of Class Members.

22. Commonality. This action presents material questions of law and fact common to the Class.

Each Class Member was owed money by Defendants and was not paid by Defendants.

23. Typicality. Plaintiffs' claims are typical of the Class's claims. All such claims present the

same elements and burden of proof; rely upon Defendants' same course of conduct; rely upon the

same legal arguments; and rely upon the same method to measure damages.

24. Adequacy. Plaintiffs and the undersigned counsel meet the requirement of adequacy.

Plaintiffs will fairly and adequately protect the interests of the Class. The undersigned counsel are

qualified, experienced and able to represent Plaintiffs and the Class.

25. Predominance. The questions of law or fact common to the Class Members predominate

over any questions affecting only individual members. Defendants' course of conduct shall be

discovered without any need for participation by individual Class Members. Similarly, this Court's

determinations of law shall be made without any need for participation by individual Class

6

Members. The Class's claims present no issues of causation or reliance unique to individual Class Members.

26. Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. This action presents textbook facts and circumstances for the conduct of a class action to afford each individual Class Member a fair and efficient manner by which to prosecute his or her common claims and, likewise, a fair and efficient manner by which Defendants may defend such claims. Class Members could number in the hundreds.

27. Individual Control. The interests of individual Class Members are overwhelmingly best served by the conduct of a class action. Class Members' individual actual damages are in the tens of thousands of dollars to low hundreds of thousands of dollars. By contrast, the undersigned counsel believe they will be compelled to invest hundreds of thousands of dollars in time, costs, and expenses in the prosecution of this action in order to best prosecute (and win) the Class's claims and unravel the web of corporate deceit and fraudulent asset-hiding of Defendants; and, if the undersigned counsel represented only the named Plaintiffs (versus the entire Class), the undersigned counsel would nevertheless be compelled to expend substantially all of the same time, costs, and expenses in the prosecution of this action on behalf of Plaintiffs, individually. Therefore, in the absence of a class action, individual Class Members would, in reasonable probability, be unable to prosecute (and win) their claims.

28. This Court will not experience any material difficulties in its administration of this action as a class action.

29. Defendants' records maintained in the ordinary course of business will readily reveal the identity, current or last known address, tax identification number, and other identifying data for

7

each and every Class Member. Such records will also reveal all relevant details in connection with the unpaid amounts owed to each Class Member in connection with Defendants' actions.

**Factual Allegations**

30. Plaintiffs state that similar lawsuits have been filed against Defendants, in one iteration or another, from which Plaintiffs have derived several of the factual allegations contained herein, including case number 22BA-CV01701-01. Plaintiff utilizes the factual allegations in those cases as a foundation for information and belief for many factual allegations contained herein with regard to communications with other health care service providers, actions taken in fraudulently restructuring, misrepresentations to several Missouri health care service providers inducing them to continue providing services to MDOC inmates, and other factual allegations.

31. Corizon Health, a privately held correctional health care provider, markets itself as "the pioneer and foremost provider of correctional healthcare in the United States," and "a company built on more than 40 years of innovation and expertise in the industry."

32. In the course of its business, Corizon Health contracted with MDOC to provide health care services to inmates under the MDOC's control.

33. To fulfill its contract with the MDOC, Corizon, LLC, acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "Corizon Health" entered into hospital services agreements (the "Agreement") with Plaintiffs. Those individual agreements and their amendments contain similar terms regarding payment of healthcare services provided by Plaintiffs.

34. "Affiliated Entity" under the Agreement "means any entity who directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health."

35. Under the Agreement between Corizon Health and Plaintiffs, Plaintiffs agreed to provide health care services to patients in exchange for compensation from Corizon Health.

36. Corizon Health agreed to reimburse Plaintiffs for health care services for patients admitted or brought to Plaintiffs for either inpatient or outpatient care by or at the direction of Corizon Health.

37. Plaintiffs were to submit claims to Corizon Health electronically.

38. Corizon Health agreed to pay claims within sixty (60) days.

39. Failure to pay claims under the agreements results in statutory interest of nine percent per annum.

40. Plaintiffs provided health care services to patients under the terms of the Agreement.

41. Plaintiffs timely submitted all required forms and notice for claims.

42. Plaintiff abided by all conditions precedent to payment in the Agreement.

43. Corizon Health did not seek or obtain prior written consent of Plaintiffs to assign, sell, or transfer any of its rights or responsibilities under the Agreement.

44. Beginning in 2020, Corizon Health Stopped Reimbursing Plaintiffs for health care services and owes Plaintiffs a combined total of hundreds of thousands of dollars.

45. Beginning in 2020, Corizon Health did not pay Plaintiffs for all submitted completed claims.

46. Beginning in 2020, Corizon Health did not pay Plaintiffs for all health care services rendered to patients.

47. Plaintiffs notified Corizon Health of its failure to timely pay for health care services rendered to patients.

Electronically Filed - Cole Circuit - November 14, 2022 - 02:57 PM

48. Corizon Health has not paid Plaintiffs for outstanding completed claims and/or health care services rendered to patients or any applicable interest charges.

49. Corizon Health is in default on Plaintiffs' outstanding completed claims.

50. Until the fourth quarter of 2021, Corizon Health (including in its various previous corporate forms) had been the healthcare provider for the MDOC for twenty-nine years, maintaining a regional office in Jefferson City, Missouri since December 1, 1992 to support the medical units of all MDOC Correctional Centers.

51. In 2011, Correctional Medical Services, Inc. and Prison Health Services, Inc. merged to form Corizon Health under its previous parent company, Valitas Health Services, Inc. To its clients and vendors, Corizon Health represented that these companies constituted the two largest correctional healthcare companies in the nation.

52. In 2014, Corizon Health won the bid for a renewed contract with the MDOC that was slated to run from July 1, 2014 to June 30, 2021. In the process of bidding for the MDOC contract, Corizon Health represented that it had a strong cash flow and sizable cash balances, boasting access to more than $72 million in operating cash in 2012, including cash held by Valitas. In addition to cash on hand, Corizon Health represented that it had access to a significant line of credit ($75 million) which it could use to meet its needs should the cash generated by its operations not be sufficient for short term need. Corizon Health further represented that Valitas generated approximately $1.2 billion in revenues in 2012 from correctional health care services, for which Corizon Health represented 55% of those revenues. Corizon Health's earnings before interest, taxes, depreciation, and amortization for 2012 was $51.6 million.

53. Corizon Health's representations about its financial strength persisted through its dealings with the MDOC. In April 2016, Corizon Health sent a proposal to the MDOC for amending the

terms of the Contract. As a part of this proposal, Corizon Health requested a reduction in the amount of the required performance bond, citing to "Corizon Health's long term tenure in the correctional healthcare industry, experience in the State of Missouri and strong financial position that makes this an unnecessary expense." The MDOC agreed with Corizon Health's proposed changes. Later that year, Corizon Health and Plaintiffs entered into the Agreement.

54. In anticipation of Corizon Health's contract expiration, the MDOC initiated a competitive bidding process for providers to submit proposals for the MDOC contract. On May 28, 2021, the MDOC chose a different healthcare provider, Centurion Health, to serve its correctional healthcare needs, ending Corizon Health's longstanding status as the MDOC's healthcare provider. Centurion Health's contract with the MDOC was slated to begin on July 1, 2021.

55. In June 2021, Corizon Health publicly protested the MDOC's award of the contract bid to Centurion Health. When that protest was denied, in August 2021, Corizon Health filed suit in Cole County against the state Office of Administration and Division of Purchasing over the award of the bid to Centurion Health. In the suit, Corizon Health sought an order blocking the change to Centurion Health.

56. Corizon Health's contract with the MDOC was extended to November 14, 2021, pending the outcome of Corizon Health's lawsuit.

57. Because Corizon Health continued to provide services to the MDOC through November 14, 2021, Plaintiffs, too, continued to provide services for Corizon Health in good faith. Despite the ongoing litigation, Plaintiffs reasonably expected Corizon Health to pay for Plaintiffs' services through the MDOC's contract termination.

58. Unbeknownst to Plaintiffs and despite Corizon Health's assurances it would pay Plaintiffs the amounts it owed under the Agreement, Corizon Health began developing a strategy to avoid its liabilities and retain its assets and operations.

59. In December 2021, Corizon Health appointed Sara Tirschwell as its CEO, self- described as someone "[w]ith more than 30 years of experience in distressed finance."

60. With Tirschwell as CEO, Corizon Health enacted a plan to undergo a divisional merger under the Texas Business Organization Code ("TBOC") to re-allocate assets and liabilities among the resulting entities to avoid the claims of its creditors, like Plaintiffs.

61. YesCare represented to at least one court that Corizon Health determined the most "value-maximizing" path forward would be to separate Corizon Health's assets from its liabilities, placing the Corizon Health assets in YesCare, beyond the reach of Corizon Health's unsecured creditors, including trade debt holders such as Plaintiffs, and leaving the liabilities with Corizon Health.

62. Unbeknownst to Plaintiffs, and while simultaneously representing its intention to pay Plaintiffs the amounts owed, Corizon Health enacted its restructuring plan in the spring of 2022:

   a.      On January 31, 2022, YesCare Corp. was incorporated in Texas. Its registered agent and sole Director at the time of formation was Sara Tirschwell, Corizon Health's Chief Executive Officer.

   b.      On April 28, 2022, Corizon Health, Inc. and its parent company, Valitas Health Services, Inc., were converted from Delaware corporations to Texas corporations. At the time of the conversions, Corizon Health had no significant operations in Texas. Corizon Health's corporate headquarters was in Brentwood, Tennessee, and it maintained a second major corporate office in St. Louis, Missouri.

c.     On May 3, 2022, Valitas Health Services, Inc., Corizon Health, Inc., and the two other Corizon subsidiaries that were incorporated in states other than Delaware, Corizon, LLC (a Missouri entity), and Corizon Health of New Jersey, LLC (a new Jersey entity), completed a four-way merger under the Texas Business Organizations Code. The four entities merged into one surviving Texas corporation: Corizon Health, Inc.

d.     Also on May 3, 2022, immediately following the four-way merger, the combined entity, "Corizon Health," underwent a Texas divisional merger, resulting in two entities: Corizon Health, Inc., and CHS TX, Inc. CHS TX, Inc. then became a wholly-owned subsidiary of YesCare Corp. Corizon Health transferred all or substantially all of its assets to CHS TX, Inc.

63. As a result of Corizon Health's restructuring scheme, CHS TX (and consequently, YesCare) received all the assets, active contracts, customers, and employees of pre-division Corizon Health, including, among other things, "[a]ll cash in the Company's bank accounts, less $1,000,000 to be maintained in the account of Corizon, LLC," "[a]ll bank accounts of the Company," with a few exceptions, "all trademarks, tradenames, domain names, trade secrets, and other intellectual property relating to the Company," "[a]ll receivable and other current assets of the Company," and "[a]ny owned real estate asset of the Company." Corizon Health, on the other hand, was gutted: the restructuring scheme left it with no active contracts, no customers, and no meaningful assets; all while bearing the liabilities for all Corizon Health's terminated or expired contracts, including over 500 active lawsuits and claims and a mere $1,000,000 in remaining assets to cover those liabilities.

13

64. Upon information and belief, the removal of substantially all assets from Corizon Health was intended to render Corizon Health unable to meet its payment obligations to creditors like Plaintiffs.

65. On May 16, 2022, YesCare issued a press release entitled, "Leading Healthcare Group Forms YesCare, Debuting New Vision and Leadership," and introduced YesCare's top management. All eleven executives listed in the press release previously held (and/or currently hold) management positions in Corizon Health. The release was published by BusinessWire at 8:07 a.m.

66. Seven minutes before the announcement was published on May 16, 2022, at 8:00 a.m., a secured creditor filed two UCC-1s in Texas, covering YesCare and CHS TX, and asserting security interests in "all assets of debtor, whether now owned or hereafter acquired" for both entities.

67. On May 19, 2022 and May 20, 2022, the same secured creditor filed UCC-3s in Missouri and New Jersey, releasing its previously-filed liens on the assets of Corizon Health (Corizon, LLC and Corizon Health of New Jersey, LLC, the subsidiaries of Corizon Health that were parties to the four-way-merger-followed-by-split executed on May 3, 2022). These released liens had been in place since April of 2017, and had covered all assets of the respective debtors.

68. On June 1, 2022, post-divisional-merger Corizon Health, through Isaac Lefkowitz, changed its name to "Tehum Care Services, Inc."

69. At no point did Corizon Health inform Plaintiffs it was "restructuring."

70. At no point did Corizon Health inform Plaintiffs it was changing its name.

71. This corporate restructuring was not an arms-length transaction in which Corizon Health sold substantially all its assets to a third party for their fair-market value. Rather, it was an insider transaction in which Corizon Health's beneficial owners placed Corizon Health's assets into new

14

entities that they also control, for the purpose of frustrating creditors, like Plaintiffs, in their efforts to collect money owed from Corizon Health.

72. In 2020, Corizon Health began defaulting on its payments under the Agreement.

73. Corizon Health, through its online portal, continued to approve claims submitted by Plaintiffs for health care services provided, although it knew it was never going to pay for those services.

74. Corizon Health's repeated approvals were intended to and did induce Plaintiffs to continue to perform under the Agreement through 2021.

75. Corizon Health's corporate headquarters is 205 Powell Place, Suite 104, Brentwood, TN 37027. That address is also the corporate headquarters for both YesCare and CHS TX.

76. On May 19, 2022, Sara Tirschwell tweeted, "I am excited to announce that the dedicated employees of Corizon Health now work for @YesCare Corp!"

77. YesCare confirms on its website that "YesCare acquired all of the employees and active contracts of Corizon Health in early 2022."

78. In YesCare's BusinessWire-published press release on May 16, 2022 under "About YesCare," it reads: "YesCare [is] composed of the former Corizon Health team."

79. Corizon Health took down its website in late September/early October of this year. But before it did, screenshots of Corizon Health's website confirm that YesCare and Corizon Health have the exact same management. Sara Tirschwell became the Chief Executive Officer of Corizon Health in late 2021, and she is now also the CEO of YesCare. Ms. Tirschwell is the sole director listed on YesCare's Certificate of Formation (filed January 26, 2022) and is also a director listed on Corizon Health, Inc.'s Certificate of Formation (filed April 28, 2022) along with Abe Goldberger, David Gefner, and Isaac Lefkowitz.

80. J. Scott King is the EVP & Chief Legal Officer for Corizon Health. He is also the EVP & Chief Legal Officer for YesCare.

81. Michael Middleton is the Chief Information Officer for Corizon Health. He is also the Chief Information Officer for YesCare.

82. Michael E. Murphy is the SVP for State Corrections for Corizon Health. He is also the SVP of State Client Relations and Business Development for YesCare.

83. Karen Davies is the Senior Vice President of Community Corrections for Corizon Health. She is also the Senior Vice President of Community Operations–Southeast for YesCare.

84. F. Jeffrey Sholey is the Senior Vice President and Chief Financial Officer of Corizon Health. He is also the Senior Vice President and Chief Financial officer for YesCare.

85. Steven Tomlin is the Senior Vice President, Business Development for Corizon Health. He is also the Senior Vice President of Reentry and Community Partnerships for YesCare.

86. Gregory Ladele is the Chief Medical Officer for Corizon Health. He is also the Chief Medical Officer for YesCare.

87. Joseph M. Pastor is the Chief Psychiatric Officer for Corizon Health. He is also the Chief Psychiatric Officer for YesCare.

88. Mary Silva is the Senior Vice President and Chief Nursing Officer for Corizon Health. She is also the Chief Clinical Officer for YesCare.

89. Stacie Koch is the Vice President of Operations–Wyoming for Corizon Health. She is also the Vice President of Operations–Wyoming for YesCare.

90. Latasha McMillan is the Vice President of Operations–Maryland for Corizon Health. She is also the Vice President of Operations–Maryland for YesCare.

16

91. Vandelyn Phillips is the Vice President of Operations–City of Philadelphia for Corizon Health. She is also the Vice President of Operations–City of Philadelphia for YesCare.

92. Despite its formation mere months ago in January 2022, and its "launch" in May of this year, YesCare's press release boasts of 40 years of experience in the field, claiming YesCare "is a leading provider of correctional healthcare services in the United States, offering quality healthcare services to states and municipalities across the country. Built on more than 40 years of innovation and expertise, the YesCare team provides services at 52 facilities across the nation, serving an average of 50,000 patients each day."

93. YesCare repeats this claim of 40-years of experience on its website, which it lifted from a substantially similar statement still appearing on Corizon Health's website as of late September 2022.

94. YesCare likewise boasts of "decades of experience providing healthcare in jails and prisons." And on YesCare's careers website, it claims it has been "serving our patients for over 40+ years," and "[o]perating across the US in over 125+ locations."

95. Not only has YesCare adopted Corizon Health's experience as its own, but it has also adopted Corizon Health's marketing and social media content; a review of YesCare's website and social media reveals references to "Corizon Health" that have yet to be scrubbed. For example, the LinkedIn icon on YesCare's website page takes users to Corizon Health's LinkedIn. The "job postings" link on Corizon Health's website, when it was still active, directed users to careers.yescarecorp.com. Under the "Culture" page of YesCare's career website are several posts showing "Corizon Health" branded banners. Several job postings for management positions for YesCare still contain reference to Corizon Health. As one example of many, a posting for the "Statewide Legal Compliance Director" for YesCare contains the following statements: "By

17

choosing a career with Corizon Health…," "As a Corizon Health professional…," and "Join Corizon Health today."

96. Further, Corizon Health converted its Twitter, Facebook page, and other social media to "YesCare" branded social media sites. For example, a review of YesCare's Facebook page shows that before May 16, 2022, the page was Corizon Health's Facebook page. To date, YesCare has failed to update the page in its entirety, with mentions of "Corizon Health" sprinkled throughout.

97. Not only is YesCare performing Corizon Health's contracts, employing Corizon Health's employees and management, and utilizing Corizon Health's headquarters, it is actively holding itself out to Corizon Health's clients as Corizon Health's successor. Indeed, YesCare's own public-facing statements confirm that the transition from "Corizon Health" to "YesCare" is nothing more than a "name change," boasting that the change from Corizon Health to YesCare was a "thoughtfully constructed strategy to guide the company through a pivotal time" conducted by YesCare's "experienced team," and that YesCare is nonetheless "utilizing all of its corporate resources, and those of its related companies, to meet staffing needs."

98. For example, on April 26, 2022, Sara Tirschwell wrote an article regarding the Opioid Crisis, and described herself as "CEO of Corizon, Soon to be YesCare." In the article, Ms. Tirschwell states "Among our patient population at Corizon, soon to be YesCare, close to half battle drug dependence."

99. On Friday, May 13, 2022, while knowing it had millions of dollars owed to Missouri health care service providers, Corizon Health informed certain individuals that on the following Monday, May 16, 2022, it would publicly announce that "Corizon Health is now YesCare."

100.    On June 1, 2022, YesCare's (and formerly Corizon Health's) in-house counsel Jennifer Finger made edits to a yet-to-be signed Memorandum of Understanding involving

18

YesCare and the Brevard County Sheriff's Office. In the edits, she changed the name of the contracting party from "YesCare Inc. (f/k/a Corizon Health)," to "CHS TX, Inc. d/b/a YesCare, successor by merger to the rights and obligations of Corizon Health, Inc., hereunder ("YesCare")."

101. On May 13, 2022, Ms. Tirschwell circulated a "YesCare Announcement–Client Email" draft to Corizon Health/YesCare's management for circulation to Corizon Health's existing clients. The subject line of the email is "Excited to Announce that Corizon Health is now YesCare."

102. In the body of the email, Ms. Tirschwell explains, "Monday morning, we will be announcing that the dedicated employees of Corizon Health have teamed up with a healthcare conglomerate to create YesCare" to "drive the company's next chapter as a leading correctional healthcare company." Ms. Tirschwell's email explained this transition "will not impact our service to you in any way." The email invited Corizon Health's clients to "join us in our excitement for this next stage of innovative and compassionate care, under the YesCare name."

103. That same day, various Corizon Health management sent this exact email to Corizon Health clients.

104. On May 16, 2022, Sara Tirschwell tweeted, "Today marks a new era in correctional healthcare as Corizon Health officially becomes @YesCare! I'm proud of the work our team has done during this transition into a better model of care."

105. Likewise, on June 2, 2022, YesCare Corp.'s (and Corizon Health's) Senior Vice President Karen Davies emailed an existing Corizon Health client about the details regarding the change from YesCare to Corizon Health. "As a follow up to our announcement on our name change," Ms. Davies explained: YesCare acquired all the active business of Corizon. As part of this acquisition, your contract with Corizon is now vested in CHS TX, LLC ("CHS"), a wholly-

owned subsidiary of YesCare. Because CHS was split from Corizon through a merger transaction, your contract has not been assigned or transferred.

106.    Ms. Davies confirmed that the transition to "YesCare" was a mere continuation of Corizon Health's business, explaining: "[t]here are no operational changes related to this transaction. Staff, P&P, contract structures, etc. will all remain the same."

107.    Ms. Davies characterized the change to "YesCare" as a "re-branding" accompanied with significant financial backing: "Under our new ownership, we are   under the ownership of a healthcare corporation . . . . This affords our re-branded organization with   backing of a large healthcare conglomerate with multitudes of resources for us to leverage[] and strong financial and leadership stability."

108.    Ms. Davies confirmed that YesCare would be using the same bank account as Corizon Health: "There will be no change in bank account information at this time."

109.    Ms. Davies further described one of YesCare's wholly-owned subsidiaries as the "successor contracting entity" because "of the merger transaction."

110.    And on June 3, 2022, Stacie Koch, YesCare's (and Corizon Health's) Vice President of Operations for Wyoming, sent the exact same email to a Wyoming client. In an email titled "Name change/Invoicing," Ms. Koch said she was following up on "our announcement on our name change," and copied verbatim Ms. Davies' email from the day before.

111.    In the course of assuming Corizon Health's operations, YesCare circulated a "Client Q&A" which further confirms YesCare as Corizon Health's successor.

112.    In the Client Q&A, YesCare answers questions like "Why is Corizon becoming YesCare?"

113.     In the Client Q&A, YesCare confirms that YesCare's federal ID number is the same as Corizon Health's, and that "no changes [will] be made to the existing agreement."

114.     In response to the question "Will this change who we work with day-to-day?" YesCare states "As you know, we have already made organizational changes. We have a new name; we have higher expectations, and we intend to only increase the support and responsiveness of your company contacts."

115.     In response to the question, "Are any of the services you provide at our facility changing?" YesCare responds, "No, the current services we provide at your facility will continue."

116.     Plaintiffs provided all at-issue services to Corizon Health before Corizon Health restructured; likewise, the amounts Corizon Health owes Plaintiffs under the Agreement (exclusive of interest) were incurred well before Corizon Health restructured to avoid those liabilities.

117.     Defendants' actions described herein establish that YesCare and CHS TX are liable as Corizon Health's successors for the amounts owed to Plaintiffs under the Agreement.

118.     Defendants' restructuring scheme was conducted fraudulently to escape liability for Corizon Health's debts and liabilities. In pursuit of this scheme, Defendants intended to and did induce Plaintiffs to perform under the Agreement by continuing to approve claims on their online portal. Defendants intended that Plaintiffs rely on their representations to induce Plaintiffs to continue to perform under the Agreement to their detriment, and Plaintiffs did so rely. Had Plaintiffs known Defendants had no intention of paying the amounts owed under the Agreement and instead intended to conduct a fraudulent scheme to transfer Corizon Health's assets, Plaintiffs would have ceased performance under the Agreement and pursued legal action against Corizon Health before it enacted its restructuring scheme.

119.     Further, Defendants' restructuring scheme amounts to a de-facto consolidation or merger. While Corizon Health remains in existence as a shell company, it has functionally ceased to exist, with the entirety of its operations and assets now with YesCare and CHS TX. Corizon Health retains no active contracts and conducts no business. YesCare and CHS TX have taken over Corizon Health's entire management team, employee base, contracts, bank accounts, assets, federal ID number, corporate headquarters, and good will.

120.     Likewise, YesCare and CHS TX are a mere continuation of Corizon Health: as is described below, Defendants retain identical incorporators, officers and directors, engage in the identical business, maintain the same employees, maintain the same contracts and customers, and maintain the same federal ID number, bank accounts, property, and headquarters.

121.     Defendants' actions as described herein show a course of conduct designed to hinder and prevent Plaintiffs from collecting the amounts owed under the Agreement, and are "fraudulent transfers" under § 428.024, RSMo., which provides that a transfer made with the actual intent to hinder, delay, or defraud a creditor is a fraudulent transfer.

### Count I – Breach of Contract
### All Defendants except the State of Missouri – Department of Corrections

122.     Plaintiffs and the Class reallege and incorporate by reference each and every allegation in the previous paragraphs as though fully set forth herein.

123.     Plaintiffs and the Class and Corizon, LLC are parties to valid and enforceable contracts.

124.     The contracts under which Plaintiffs and the Class are parties are substantially similar and contain the same conditions precedent, which Plaintiffs and the Class completed.

125.     Corizon Health, as the purported surviving entity from the four-way merger with Corizon, LLC, is bound to the Agreement.

126.     Because Corizon Health, YesCare, and CHS TX are directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health, they are each an "Affiliated Entity" under the Agreement.

127.     Thus, Corizon Health, YesCare, and CHS TX are liable to Plaintiffs and the Class for the amounts owed under the Agreement.

128.     Alternatively, YesCare and CHS TX are liable as successors-in-interest to Corizon Health.

129.     Plaintiffs and the Class substantially performed their obligations under the terms of the Agreement.

130.     Plaintiffs and the Class timely submitted completed claims to Defendants pursuant to the terms of the Agreement.

131.     Plaintiffs and the Class requested payment for health care services rendered to patients pursuant to the terms of the Agreement.

132.     Defendants failed to timely pay Plaintiffs and the Class all outstanding submitted Completed Claims, including interest due and owing.

133.     Defendants failed to pay Plaintiffs and the Class for all health care services rendered to Patients, including interest due and owing.

134.     Defendants' non-payment of outstanding Completed Claims constitutes breaches of the Agreement.

135.     Defendants' non-payment for all health care services rendered to patients constitutes breaches of the Agreement.

136.     As a direct and proximate result of Defendants' breaches of the Agreement, Plaintiffs have sustained damages that are continuing in nature in an amount to be determined at trial.

### Count II – Breach of Covenant of Good Faith and Fair Dealing
### All Defendants except the State of Missouri – Department of Corrections

137.     Alternatively, Defendants breached the implied covenant of good faith and fair dealing.

138.     Plaintiffs reallege and incorporate by reference paragraphs 1-121 as though fully set forth herein.

139.     Plaintiffs and the Class and Defendants are parties to substantially similar, valid and enforceable contracts (the Agreement).

140.     The Agreement and amendments thereto define "Corizon Health" under the Agreement as "Corizon, Inc. . . . acting for itself or on behalf of any/all/other affiliated companies."

141.     Corizon Health, as the purported surviving entity from the four-way merger with Corizon, LLC, is bound to the Agreement.

142.     Because Corizon Health, YesCare and CHS TX are directly or indirectly through one (1) or more intermediaries controls, or is controlled by, or is under common control with, Corizon Health, they are each an "Affiliated Entity" under the Agreement.

143.     Thus, Corizon Health, YesCare, and CHS TX are liable to Plaintiffs and the Class for the amounts owed under the Agreement.

144.     Plaintiffs and the Class timely submitted Completed Claims to Defendants for health care services provided to patients in accordance with the terms of the Agreement.

145.     Plaintiffs and the Class submitted requests for payment to Defendants for health care services provided to patients.

24

146.     Plaintiffs and the Class expected to receive payment for the Completed Claims submitted to Defendants.

147.     Plaintiffs and the Class expected to receive payment for Health Care Services provided to Patients.

148.     Despite Plaintiffs' and the Class's expectation of payment for the Completed Claims, Defendants decided to withhold payment from Plaintiffs.

149.     Despite Plaintiffs' and the Class's expectation of payment for Health Care Services provided to Patients, Defendants decided to withhold payment from Plaintiffs.

150.     Defendants' decision to withhold payment for Completed Claims evades the spirit of the Agreement so as to deny Plaintiffs and the Class the expected benefit of payment for Completed Claims.

151.     Defendants' decision to withhold payment for Health Care Services provided to Patients evades the spirit of the Agreement so as to deny Plaintiffs and the Class the expected benefit of payment for Health Care Services provided to Patients.

152.     As a result of the aforementioned conduct, Defendants breached the Agreement's implied covenant of good faith and fair dealing.

153.     Accordingly, Defendants' breach of the implied covenant of good faith and fair dealing directly and proximately caused Plaintiffs' and the Class's damages that are continuing in nature in an amount to be determined at trial.

### Count III – Successor Liability
### Express and/or Implied Agreement to Assume Debts and/or Liabilities
### Defendants YesCare Corp. and CHS TX, Inc.

154.     Plaintiffs reallege and incorporate by reference paragraphs 1-153 as though fully set forth herein.

155.     On January 31, 2022, YesCare was created.

156.     Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC completed a four-way merger, wherein the only surviving entity was Corizon Health, Inc.

157.     Corizon Health then split into two entities: Corizon Health, and CHS TX.

158.     CHS TX became a wholly-owned subsidiary of YesCare.

159.     Corizon Health transferred all or substantially all of its assets to CHS TX.

160.     The Agreement and amendments thereto define "Corizon Health" under the Agreement as Corizon "acting for itself or on behalf of any/all/other affiliated companies," which encompasses Corizon Health, Inc., CHS TX, Inc., and YesCare Corp.

161.     Additionally, "Affiliated Entity" under the Agreement means any entity who directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health, which encompasses Corizon Health, Inc., CHS TX, Inc., and YesCare Corp.

162.     Consequently, under the Agreement and amendments thereto, CHS TX, Inc. and/or YesCare Corp. expressly or impliedly agreed to assume the debts and/or liabilities of Corizon, LLC and/or Corizon Health, Inc. with respect to Health Care Services provided by Plaintiffs and the Class to Patients.

163.     Accordingly, YesCare Corp. and CHS TX, Inc. are the successors to Corizon Health, Inc. and/or Corizon, LLC, and are liable to Plaintiffs and the Class for the amounts owed under the parties' Agreement.

**Count IV – Successor Liability**
**De Facto Merger**
**YesCare Corp. and CHS TX, Inc.**

164.     Plaintiffs reallege and incorporate by reference paragraphs 1-163 as though fully set forth herein.

165.     On January 31, 2022, YesCare was created.

166.     Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC completed a four-way merger, wherein the only surviving entity was Corizon Health, Inc.

167.     Corizon Health then split into two entities: Corizon Health and CHS TX.

168.     CHS TX became a wholly-owned subsidiary of YesCare.

169.     Corizon Health transferred all or substantially all of its assets to CHS TX.

170.     More particularly, business assets, including contracts and employees, of Corizon Health, Inc. were transferred to YesCare and CHS TX in early 2022.

171.     YesCare and CHS TX assumed the liabilities of Corizon Health necessary for the uninterrupted continuation of Corizon Health's business, including rent, electricity, salaries, wages, and business services expenses.

172.     Management of Corizon Health was continued in YesCare and CHS TX through the same leadership team, including the same CEO, Sara Tirschwell.

173.     Personnel employed by Corizon Health continued to be employed by YesCare and CHS TX following the transfer of Corizon Health's assets to YesCare and CHS TX.

174.     Following the transfer of Corizon Health's assets to YesCare and CHS TX, YesCare and CHS TX continued business at the same address as Corizon Health.

27

175.     Following the transfer of Corizon Health's assets to YesCare and CHS TX, YesCare retained the same federal ID number and bank accounts as Corizon Health.

176.     Indeed, YesCare specifically informed Corizon Health's former customers that the services they received from Corizon Health would continue through YesCare.

177.     Upon information and belief, the same individuals who have an ownership interest in Corizon Health have an ownership interest in YesCare and CHS TX.

178.     Following the transfer, Corizon Health ceased its ordinary business operations.

179.     Corizon Health no longer provides healthcare in jails and/or prisons.

180.     Corizon Health became a mere shell entity, with insufficient assets to cover liabilities.

181.     Because Corizon Health retained only expired contracts, on information and belief, it will dissolve as soon as legally and practically possible.

182.     Following the cessation of Corizon Health's business, YesCare and CHS TX have conducted the same business operation with the same clients.

183.     Specifically, CHS TX (and consequently, YesCare) received all of the active contracts of Corizon Health, which are necessary for the uninterrupted continuation of normal business operations.

184.     Despite only being incorporated in January of 2022, YesCare holds itself out to the public as a company with "more than 40 years of experience as the leading provider of correctional healthcare," assuming as its own Corizon Health's public-facing marketing statements.

185.     Accordingly, Defendants YesCare and CHS TX are the successors to Corizon Health and are therefore liable to Plaintiffs and the Class for the amounts owed under the parties' Agreement by reason of their de facto merger with Corizon Health.

28

**Count V – Successory Liability**
**Mere Continuation**
**YesCare Corp. and CHS TX, Inc.**

186.     Plaintiffs reallege and incorporate by reference paragraphs 1-185 as though fully set forth herein.

187.     On January 31, 2022, YesCare was created.

188.     Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC completed a four-way merger, wherein the only surviving entity was Corizon Health, Inc.

189.     Corizon Health then split into two entities: Corizon Health, and CHS TX.

190.     CHS TX became a wholly-owned subsidiary of YesCare.

191.     Corizon Health transferred all or substantially all of its assets to CHS TX.

192.     There is common identity of officers, directors, and stockholders of YesCare, CHS TX, and Corizon Health.

193.     The incorporators of YesCare, CHS TX, and Corizon Health are common.

194.     The business operations of YesCare and/or CHS TX are identical to the business operations of Corizon Health.

195.     YesCare, CHS TX, and Corizon Health are manifestations of the same business enterprise under the same real ownership, management, and control.

196.     YesCare and CHS TX assumed all employees and active contracts of Corizon Health.

197.     YesCare and CHS TX conduct the exact same business as Corizon Health, and have the same headquarters, directors, management, employees, contracts, clients, property, and use the same marketing and social media sites.

198.     YesCare and CHS TX retain the same federal identification number and bank account(s) as Corizon Health.

199.     YesCare holds itself out to the public as the same company as Corizon Health, re-branded with a name change.

200.     Despite only being incorporated in January of 2022, YesCare claims it is a company with "more than 40 years of experience as the leading provider of correctional healthcare," assuming as its own Corizon Health's public-facing marketing statements.

201.     YesCare informed Corizon Health's employees and customers about the change to YesCare.

202.     Accordingly, YesCare and CHS TX are the successors to Corizon Health and are liable to Plaintiffs and the Class for the amounts owed under the parties' Agreement by reason of being a mere continuation of Corizon Health.

**Count VI – Successor Liability**
**Intent to Defraud Creditors**
**YesCare Corp. and CHS TX, Inc.**

203.     Plaintiffs reallege and incorporate by reference paragraphs 1-202 as though fully set forth herein.

204.     On January 31, 2022, YesCare was created.

205.     Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC completed a four-way merger, wherein the only surviving entity was Corizon Health, Inc.

206.     Corizon Health then split into two entities: Corizon Health, and CHS TX.

207.     CHS TX became a wholly-owned subsidiary of YesCare.

208.     Corizon Health transferred all or substantially all of its assets to CHS TX.

30

209.     YesCare and CHS TX were formed to frustrate and evade the creditors of Corizon Health.

210.     Corizon Health's conveyance of assets was to affiliated entities, CHS TX and YesCare.

211.     The conveyance from Corizon Health to CHS TX and YesCare was for inadequate consideration.

212.     The transfer of assets from Corizon Health to CHS TX and YesCare were different from Corizon Health's usual method of transacting business.

213.     The transfer of assets from Corizon Health to CHS TX and YesCare were made in anticipation of suit.

214.     The transfer of assets from Corizon Health to CHS TX and YesCare were made so that the assets of Corizon Health could be retained by the same ownership.

215.     The transfer of assets from Corizon Health to CHS TX and YesCare resulted in the transfer of nearly all of the Corizon Health's property.

216.     Corizon Health is rendered insolvent by the transfer of its assets to CHS TX and YesCare.

217.     Corizon Health, CHS TX, and YesCare are unable to produce rebutting evidence to demonstrate the circumstances surrounding the transfer of Corizon Health's assets to CHS TX and YesCare are not suspicious.

218.     YesCare and CHS TX resumed the operations of Corizon Health to frustrate and evade the creditors of Corizon Health, including Plaintiffs and the Class, with respect to the amounts owed under the parties' Agreement.

219.     Accordingly, YesCare and CHS TX are the successors to Corizon Health, and are liable to Plaintiffs and the Class for the amounts owed under the parties' Agreement by reason of their intent to defraud Corizon Health's creditors.

### Count VII – Common Law Fraud and Conspiracy to Commit Common Law Fraud
### All Defendants except the State of Missouri – Department of Corrections

220.     Plaintiffs reallege and incorporate by reference paragraphs 1-219 as though fully set forth herein.

221.     With an intent to hinder, delay, and defraud Plaintiffs and the Class of the obligations owed them under the Agreement, Defendants participated in, and continue to participate in, by a meeting of the minds, a civil conspiracy to prevent Plaintiffs and the Class from collecting on the obligations owed them under said Agreement by Corizon Health.

222.     In pursuit of this conspiracy, Defendants intended to and did induce Plaintiffs and the Class to perform under the Agreement.

223.     Defendants intended that Plaintiffs and the Class rely on their representations to induce Plaintiffs to continue to perform under the Agreement to their detriment.

224.     Plaintiffs and the Class relied on Defendants' assurances by continuing to perform their obligations under the Agreement.

225.     After the termination of the Agreement but before restructuring, and in pursuit of the conspiracy, Corizon Health knowingly and falsely represented to Plaintiffs that Corizon Health intended to pay Plaintiffs the amounts due and owing under the Agreement.

226.     In the midst of Defendants' spring 2022 restructuring scheme, Corizon Health took steps to delay vendors from taking action against it while it restructured in an attempt to make Corizon Health's assets judgment proof.

Electronically Filed - Cole Circuit - November 14, 2022 - 02:57 PM

227.     Corizon Health induced Plaintiffs and the Class to rely on assurances that Corizon Health would pay the amounts owed under the Agreement, allowing Defendants time to fraudulently convey to YesCare and CHS TX the assets of Corizon Health to avoid payment to Plaintiffs and the Class.

228.     Had Plaintiffs and the Class known Defendants had no intention of paying the amounts owed under the Agreement, Plaintiffs and the Class would have ceased performance under the Agreement.

229.     Had Plaintiffs and the Class known Defendants intended to conduct a fraudulent scheme to transfer Corizon Health's assets, Plaintiffs and the Class would have pursued legal action against Corizon Health before Corizon Health enacted its restructuring scheme to strip Corizon Health of its assets.

230.     Plaintiffs and the Class have sustained damages directly and proximately caused by Defendants' fraud. Plaintiffs and the Class have and continue to be damaged as Defendants' fraud and civil conspiracy to commit fraud has prevented Plaintiffs and the Class from collecting the amounts owed under the Agreement by Defendants.

231.     Accordingly, Defendants have and continue to be engaged in such intentional conduct without just cause and with a deliberate and flagrant disregard for Plaintiffs' rights in order to prevent Plaintiffs from collecting on the obligations owed them under the Agreement by Corizon Health, such that Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and deter like conduct.

Electronically Filed - Cole Circuit - November 14, 2022 - 02:57 PM

## Count VIII – Fraudulent Transfer
### Pursuant to the Missouri Uniform Fraudulent Transfer Act, §§ 428.005, RSMo. et seq.
### Defendant Corizon Health

232.     Plaintiffs reallege and incorporate by reference paragraphs 1-231 as though fully set forth herein.

233.     Plaintiffs have filed this action, in part, under the Missouri Uniform Fraudulent Transfer Act, §§ 428.005, RSMo. et seq., and are seeking all relief and remedies available under that Act.

234.     Plaintiffs are, and have been at all times material hereto, "creditors" under the Act as they are each a "person who has a claim" against Corizon Health under § 428.009(4), RSMo.

235.     Corizon Health is, and has been at all times material hereto, a "debtor" that owes liability to Plaintiffs on a "claim" under § 428.009, RSMo.

236.     Corizon Health owes hundreds of thousands to millions of dollars to Plaintiffs and the Class under the Agreement.

237.     The damages owed to Plaintiffs and the Class, are a "claim" under § 428.009(3), RSMo. because they are "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

238.     Corizon Health's transfer of substantially all of its assets to YesCare and CHS TX is a "transfer" § 428.009(12), RSMo.

239.     Corizon Health's transfer of substantially all of its assets to YesCare and CHS TX is fraudulent under § 428.024(1), RSMo. because Corizon Health made the transfer to YesCare and CHS TX with the actual intent to hinder, delay, or defraud Plaintiffs, creditors of Corizon Health.

240.     Corizon Health demonstrated actual intent under § 428.024(1), RSMo. to defraud Plaintiffs and the Class.

241.     In transferring Corizon Health's assets to YesCare and CHS TX for inadequate or no consideration, Corizon Health actually intended to hinder, delay, or defraud Plaintiffs and the Class with respect to amounts owed to Plaintiffs and the Class by Corizon Health pursuant to the parties' Agreement.

242.     Plaintiffs and the Class have and continue to be damaged as Corizon Health's fraudulent transfer has prevented Plaintiffs and the Class from collecting the amounts owed under the Agreement by Corizon Health.

243.     Defendants have and continue to be engaged in such intentional conduct without just cause and with a deliberate and flagrant disregard for Plaintiffs' and the Class's rights in order to prevent Plaintiffs and the Class from collecting on the obligations owed them under the Agreement by Corizon Health, such that Plaintiffs and the Class are entitled to an award of punitive damages in an amount sufficient to punish and deter like conduct.

244.     As a direct and proximate result of the fraudulent transfer, Plaintiffs and the Class have been damaged and are entitled to the avoidance of the transfer to the extent necessary to satisfy the debt owed to Plaintiffs and the Class, attachment or garnishment against the assets transferred or other property of YesCare, and an injunction against further disposition by Defendants of the assets transferred or of other property.

Electronically Filed - Cole Circuit - November 14, 2022 - 02:57 PM

**Count IX – Civil Conspiracy to Engage in a Fraudulent Transfer**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, §§ 428.005, RSMo. et seq.**
**All Defendants except the State of Missouri – Department of Corrections**

245.     Plaintiffs reallege and incorporate by reference paragraphs 1-244 as though fully set forth herein.

246.     Plaintiffs and the Class have filed this action, in part, under the Missouri Uniform Fraudulent Transfer Act §§ 428.005, RSMo. et seq., and are seeking all relief and remedies available under that Act.

247.     Plaintiffs and the Class are, and have been at all times material hereto, "creditors" under the Act as they are each a "person who has a claim" against Corizon Health under § 428.009(4), RSMo.

248.     Corizon Health is, and has been at all times material hereto, a "debtor" that owes liability to Plaintiffs and the Class on a "claim" under § 428.009, RSMo.

249.     Corizon Health owes hundreds of thousands to millions of dollars to Plaintiffs and the Class under the Agreement.

250.     The damages owed to Plaintiffs and the Class, are a "claim" under § 428.009(3), RSMo. because they are "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

251.     Corizon Health's transfer of substantially all of its assets to YesCare and CHS TX is a "transfer" § 428.009(12), RSMo.

252.     Corizon Health's transfer of substantially all of its assets to YesCare and CHS TX is fraudulent under § 428.024(1), RSMo. because Corizon Health made the transfer to YesCare and CHS TX with the actual intent to hinder, delay, or defraud Plaintiffs, creditors of Corizon Health.

36

253.     Corizon Health demonstrated actual intent under § 428.024(1), RSMo. to defraud Plaintiffs and the Class.

254.     Corizon Health, YesCare, and CHS TX met, joined together, planned, conspired, and agreed to create a scheme for transferring assets out of the control of Corizon Health for the purpose of rendering Corizon Health insolvent and unable to pay Plaintiffs and the Class, its creditors.

255.     The scheme agreed to by Corizon Health, YesCare, and CHS TX included stripping Corizon Health of its assets and allocating them to YesCare and CHS TX, both incorporated and controlled by the same individuals responsible for Corizon Health, to insulate Corizon Health from the threat of a receiver or creditors collecting on debts owed by Corizon Health.

256.     Corizon Health, YesCare, and CHS TX agreed or understood that the purpose of their agreement was unlawful and would result in injury to Plaintiffs and the Class and others, and understood that each would act in concert with the others to achieve this purpose.

257.     In conspiring to transfer Corizon Health's assets to YesCare and CHS TX for inadequate or no consideration, Defendants actually intended to hinder, delay, or defraud Plaintiffs with respect to amounts owed to Plaintiffs and the Class by Corizon Health pursuant to the parties' Agreement.

258.     Defendants have and continue to knowingly participate in the civil conspiracy involving the aforesaid fraudulent conveyance scheme and have benefitted from it.

259.     Plaintiffs and the Class have and continue to be damaged as Defendants' civil conspiracy to commit fraudulent transfer has prevented Plaintiffs and the Class from collecting the amounts owed under the Agreement by Corizon Health.

260.     Defendants have and continue to be engaged in such intentional conduct without just cause and with a deliberate and flagrant disregard for Plaintiffs' rights in order to prevent Plaintiffs and the Class from collecting on the obligations owed them under the Agreement by Corizon Health, such that Plaintiffs and the Class are entitled to an award of punitive damages in an amount sufficient to punish and deter like conduct.

261.     As a direct and proximate result of the fraudulent transfer, Plaintiffs have been damaged and are entitled to the avoidance of the transfer to the extent necessary to satisfy the debt owed to Plaintiffs, attachment or garnishment against the assets transferred or other property of YesCare, and an injunction against further disposition by Defendants of the assets transferred or of other property.

**Count X – Constructive Fraudulent Transfer**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act §§ 428.005, RSMo. et seq.**
**Defendant Corizon Health**

262.     Plaintiffs reallege and incorporate by reference paragraphs 1-261 as though fully set forth herein.

263.     Plaintiffs and the Class have filed this action, in part, under the Missouri Uniform Fraudulent Transfer Act §§ 428.005, RSMo. et seq., and are seeking all relief and remedies available under that Act.

264.     Plaintiffs and the Class are, and have been at all times material hereto, "creditors" under the Act as they are each a "person who has a claim" against Corizon Health under § 428.009(4), RSMo.

265.     Corizon Health is, and has been at all times material hereto, a "debtor" that owes liability to Plaintiffs and the Class on a "claim" under § 428.009, RSMo.

38

266.     Corizon Health owes hundreds of thousands to millions of dollars to Plaintiffs and the Class under the Agreement.

267.     The damages owed to Plaintiffs and the Class are a "claim" under § 428.009(3), RSMo. because they are "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

268.     The transfer by Corizon Health to YesCare and CHS TX of substantially all assets is a fraudulent transfer under § 428.024, RSMo. because Corizon Health did not receive reasonably equivalent value in exchange for the transfer of its assets and Corizon Health was engaged in a business or transaction with Plaintiffs and the Class for which the remaining assets of Corizon Health (approximately $1 million in cash) were unreasonably small in relation to the business or transaction (the millions owed to all creditors).

269.     The transfer by Corizon Health to YesCare and CHS TX of substantially all assets is likewise fraudulent transfer under § 428.024, RSMo. because Corizon Health intended to incur, or believed or reasonably should have believed that it would incur debts beyond their ability to pay as they became due; namely, the amounts owed by Corizon Health to Plaintiffs and the Class under the Agreement.

270.     The transfers by Corizon Health are also a fraudulent transfer under § 428.029(1), RSMo. because Plaintiffs' and the Class's claims against Corizon Health arose before the transfer and Corizon Health did not receive reasonably equivalent value in exchange for the assets transferred, and Corizon Health was either insolvent at that time or became insolvent as a result of the transfer.

271.     By virtue of participating in and committing these fraudulent transfers, Corizon Health is liable to Plaintiffs and the Class. Plaintiffs and the Class have been damaged, in part, because they may no longer collect money owed to them by Corizon Health because Corizon Health transferred assets from itself, leaving it effectively insolvent.

272.     Corizon Health's actions in planning, orchestrating, and implementing these fraudulent transfers shows an evil motive and reckless indifference to the rights of Plaintiffs and the Class, thereby warranting the imposition of punitive damages to punish Defendants and to deter others from like conduct.

### Count XI – Conspiracy to Engage in a Constructive Fraudulent Transfer
### Pursuant to the Missouri Uniform Fraudulent Transfer Act §§ 428.005, RSMo. et seq.
### All Defendants except the State of Missouri – Department of Corrections

273.     Plaintiffs reallege and incorporate by reference paragraphs 1-272 as though fully set forth herein.

274.     Plaintiffs and the Class have filed this action, in part, under the Missouri Uniform Fraudulent Transfer Act, §§ 428.005, RSMo. et seq., and are seeking all relief and remedies available under that Act.

275.     Plaintiffs and the Class are, and have been at all times material hereto, "creditors" under the Act as they are each a "person who has a claim" against Corizon Health under § 428.009(4), RSMo.

276.     Corizon Health is, and has been at all times material hereto, a "debtor" that owes liability to Plaintiffs and the Class on a "claim" under § 428.009, RSMo.

277.     Corizon Health owes hundreds of thousands to millions of dollars to Plaintiffs and the Class under the Agreement.

278. The damages owed to Plaintiffs and the Class are a "claim" under § 428.009(3), RSMo. because they are "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

279. The transfer by Corizon Health to YesCare and CHS TX of substantially all assets is a fraudulent transfer under § 428.024, RSMo. because Corizon Health did not receive reasonably equivalent value in exchange for the transfer of its assets and Corizon Health was engaged in a business or transaction with Plaintiffs and the Class for which the remaining assets of Corizon Health (approximately $1 million in cash) were unreasonably small in relation to the business or transaction (the millions owed to all creditors).

280. The transfer by Corizon Health to YesCare and CHS TX of substantially all assets is likewise fraudulent transfer under § 428.024, RSMo. because Corizon Health intended to incur, or believed or reasonably should have believed that it would incur debts beyond their ability to pay as they became due; namely, the amounts owed by Corizon Health to Plaintiffs and the Class under the Agreement.

281. The transfers by Corizon Health are also a fraudulent transfer under § 428.029(1), RSMo. because Plaintiffs' and the Class's claims against Corizon Health arose before the transfer and Corizon Health did not receive reasonably equivalent value in exchange for the assets transferred, and Corizon Health was either insolvent at that time or became insolvent as a result of the transfer.

282. Corizon Health, YesCare, and CHS TX met, joined together, planned, conspired, and agreed to create a scheme for transferring assets out of the control of Corizon Health for the

purpose of rendering Corizon Health insolvent and unable to pay Plaintiffs and the Class, its creditors.

283.     The scheme agreed to by Corizon Health, YesCare, and CHS TX included stripping Corizon Health of its assets and allocating them to YesCare and CHS TX, both incorporated and controlled by the same individuals responsible for Corizon Health, to insulate Corizon Health from the threat of a receiver or creditors collecting on debts owed by Corizon Health.

284.     Corizon Health, YesCare, and CHS TX agreed or understood that the purpose of their agreement was unlawful and would result in injury to Plaintiffs and the Class and others, and understood that each would act in concert with the others to achieve this purpose.

285.     Defendants have and continue to knowingly participate in the civil conspiracy involving the aforesaid fraudulent conveyance scheme and have benefitted from it.

286.     Plaintiffs and the Class have and continue to be damaged as Defendants' civil conspiracy to commit fraudulent transfer has prevented Plaintiffs and the Class from collecting the amounts owed under the Agreement by Corizon Health.

287.     Defendants' actions in planning, orchestrating, and implementing these fraudulent transfers shows an evil motive and reckless indifference to the rights of Plaintiffs and the Class, thereby warranting the imposition of punitive damages to punish Defendants and to deter others from like conduct.

### Count XII – Breach of Contract
### Defendant State of Missouri – Department of Corrections (Not on a Class Basis)

288.     Plaintiffs reallege and incorporate by reference paragraphs 1-287 as though fully set forth herein.

289.     Plaintiffs and Corizon Health are parties to valid and enforceable contracts under which Corizon Health was an agent for the State of Missouri – Department of Corrections, who was the principal.

290.     As described herein, Defendant Corizon Health breached the agreements with Plaintiffs.

291.     The State of Missouri – Department of Corrections is liable to the Plaintiffs under an agency theory of liability for Corizon Health's breach of their Agreement.

292.     As a direct and proximate result of Defendants' breaches of the Agreement, Plaintiffs have sustained damages that are continuing in nature in an amount to be determined at trial.

293.     Plaintiffs do not seek relief against this Defendant on a class basis.


### Count XIII – Quantum Meruit
### Defendant State of Missouri – Department of Corrections (Not on a Class Basis)

294.      Plaintiffs reallege and incorporate by reference paragraphs 1-293 as though fully set forth herein.

295.     Plaintiffs performed health care services for inmates of MDOC.

296.     MDOC received the benefit of the services rendered by Plaintiffs because MDOC is constitutionally obligated to provide care for said inmates.

297.     The services rendered by Plaintiffs provided MDOC with a benefit that had reasonable value.

298.     Defendant MDOC has not paid Plaintiffs for the reasonable value of the services rendered.

299.     As a direct and proximate result of Defendant MDOC's failure to pay the reasonable value of services rendered, Plaintiffs have been damaged in an amount to be determined at trial.

300.     Plaintiffs do not seek relief against this Defendant on a class basis.

## Prayer for Relief

WHEREFORE, Plaintiffs and the Class request relief and judgment against Defendants, jointly and severally, as follows:

(a)     For a judgment against Defendants for the causes of action alleged against them;

(b)     For an order enjoining Defendants from engaging in further unlawful conduct as alleged herein;

(c)     For an attachment or other provisional remedy against the assets transferred or other property of the transferee in accordance with the procedures prescribed by Missouri law under § 428.039, RSMo.;

(d)     For damages in an amount to be proven at trial;

(e)     For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(f)     For punitive damages;

(g)     For Plaintiffs' attorneys' fees as allowable by law or equity;

(h)     For Plaintiffs' costs incurred; and

(i)     For such other relief in law or equity as the Court deems just and proper.

## Demand for Jury Trial

Plaintiffs hereby demand a jury trial on all claims so triable.

Respectfully submitted,

44

**CARSON & COIL, P.C.**


_____
Blake I. Markus                        61755
515 East High Street, P.O. Box 28
Jefferson City, Missouri 65102
Phone:  573-636-2177
Fax:  573-636-7119
Blake.m@carsoncoil.com
**Attorneys for Plaintiffs**



# IN THE 19TH JUDICIAL CIRCUIT, COLE COUNTY, MISSOURI

| Judge or Division:<br>JON EDWARD BEETEM | Case Number: 22AC-CC07354 |
|---|---|
| Plaintiff/Petitioner:<br>CAPITOL EYE CARE, INC.<br><br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BLAKE I MARKUS<br>CARSON & COIL<br>515 EAST HIGH STREET<br>STE 401<br>JEFFERSON CITY, MO 65101 |
| Defendant/Respondent:<br>TEHUM CARE SERVICES, INC. D/B/A<br>CORIZON HEALTH, INC. | Court Address:<br>PO BOX 1870<br>301 E HIGH ST<br>JEFFERSON CITY, MO 65101 |
| Nature of Suit:<br>CC Breach of Contract | |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: CHS TX, INC.
**Alias:**

120 SOUTH CENTRAL AVE.
CLAYTON, MO 63105

*COURT SEAL OF*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

*COLE COUNTY*

_Thursday, November 17, 2022_     _____
Date                      Clerk          By tr
Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above Summons by: (check one)
☐ delivering a copy of the summons and petition to the defendant/respondent.
☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with
_____, a person at least 18 years of age residing therein.
☐ (for service on a corporation) delivering a copy of the summons and petition to:
_____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
            Date                       Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (07-21) SM30 (SMCC) *For Court Use Only:* **Document ID # 22-SMCC-2645** 1 of 1 (22AC-CC07354)    Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 2:22-cv-04191-MDH    Document 1-2    Filed 12/30/22    Page 49 of 56



# IN THE 19TH JUDICIAL CIRCUIT, COLE COUNTY, MISSOURI

| Judge or Division:<br>JON EDWARD BEETEM | Case Number: 22AC-CC07354 |
|---|---|
| Plaintiff/Petitioner:<br>CAPITOL EYE CARE, INC. | Plaintiff's/Petitioner's Attorney/Address<br>BLAKE I MARKUS<br>CARSON & COIL<br>515 EAST HIGH STREET<br>STE 401<br>JEFFERSON CITY, MO 65101 |
| vs. | |
| Defendant/Respondent:<br>TEHUM CARE SERVICES, INC. D/B/A<br>CORIZON HEALTH, INC. | Court Address:<br>PO BOX 1870<br>301 E HIGH ST<br>JEFFERSON CITY, MO 65101 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| **The State of Missouri to:** **TEHUM CARE SERVICES, INC. D/B/A CORIZON HEALTH, INC.**<br>Alias: | |
| **120 SOUTH CENTRAL AVE.**<br>**CLAYTON, MO 63105**<br><br>*COURT SEAL OF*<br><br>*COLE COUNTY* | You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.<br><br>_Thursday, November 17, 2022_ _____<br>Date                          Clerk         By tr<br>Further Information: |

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____       _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
                   Date                     Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $____10.00____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (07-21) SM30 (SMCC) *For Court Use Only:* **Document ID # 22-SMCC-2644** 1 of 1 (22AC-CC07354)    Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 2:22-cv-04191-MDH    Document 1-2    Filed 12/30/22    Page 50 of 56



# IN THE 19TH JUDICIAL CIRCUIT, COLE COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JON EDWARD BEETEM | Case Number: 22AC-CC07354 |
| Plaintiff/Petitioner:<br>CAPITOL EYE CARE, INC.<br><br><br><br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>BLAKE I MARKUS<br>CARSON & COIL<br>515 EAST HIGH STREET<br>STE 401<br>JEFFERSON CITY, MO 65101 |
| Defendant/Respondent:<br>TEHUM CARE SERVICES, INC. D/B/A<br>CORIZON HEALTH, INC. | Court Address:<br>PO BOX 1870<br>301 E HIGH ST<br>JEFFERSON CITY, MO 65101 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   YESCARE CORP.
        Alias:

**3411 YOAKUM BLVD.**
**#2901**
**HOUSTON, TX 77006**

*COURT SEAL OF*

*COLE COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

_____*Thursday, November 17, 2022*_____      _____
           Date                                             Clerk         By tr
Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above Summons by: (check one)
   ☐ delivering a copy of the summons and petition to the defendant/respondent.
   ☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.
   ☐ (for service on a corporation) delivering a copy of the summons and petition to _____ (name) _____ (title).
   ☐ other: _____.

Served at _____ (address)

in _____ County, _____ (state), on _____ (date) at _____ (time).

_____        _____
   Printed Name of Sheriff or Server              Signature of Sheriff or Server

        **Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
        I am: (check one) ☐ the clerk of the court of which affiant is an officer.
                  ☐ the judge of the court of which affiant is an officer.
*(Seal)*              ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                  ☐ authorized to administer oaths. (use for court-appointed server)

_____
                           Signature and Title

Case 2:22-cv-04191-MDH   Document 1-2   Filed 12/30/22   Page 51 of 56

| Service Fees | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $_____ per mile) |
| **Total** | $_____ | |

See the following page for directions to officer making return on service of summons.

## Directions to Officer Making Return on Service of Summons

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.



# IN THE 19TH JUDICIAL CIRCUIT, COLE COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JON EDWARD BEETEM | Case Number: 22AC-CC07354 |
| Plaintiff/Petitioner:<br>CAPITOL EYE CARE, INC.<br><br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BLAKE I MARKUS<br>CARSON & COIL<br>515 EAST HIGH STREET<br>STE 401<br>JEFFERSON CITY, MO 65101 |
| Defendant/Respondent:<br>TEHUM CARE SERVICES, INC. D/B/A<br>CORIZON HEALTH, INC. | Court Address:<br>PO BOX 1870<br>301 E HIGH ST<br>JEFFERSON CITY, MO 65101 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| The State of Missouri to: | **MISSOURI DEPARTMENT OF CORRECTIONS**<br>Alias: **MO DEPARTMENT OF CORRECTIONS** |

**2729 PLAZA DRIVE**
**C/O ANNE PRECYTHE**
**JEFFERSON CITY, MO 65109**

*COURT SEAL OF*

*COLE COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

__Thursday, November 17, 2022__ _____
Date                                                           Clerk                          By tr

Further Information:

## Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above Summons by: (check one)
☐ delivering a copy of the summons and petition to the defendant/respondent.
☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with
_____, a person at least 18 years of age residing therein.
☐ (for service on a corporation) delivering a copy of the summons and petition to:
_____ (name) _____ (title).
☐ other: _____

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                         Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**
Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____     _____
Date                                    Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (07-21) SM30 (SMCC) *For Court Use Only:* **Document ID # 22-SMCC-2646** 1 of 1 (22AC-CC07354)     Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo



## IN THE 19TH JUDICIAL CIRCUIT, COLE COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JON EDWARD BEETEM | Case Number: 22AC-CC07354 |
| Plaintiff/Petitioner:<br>CAPITOL EYE CARE, INC.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BLAKE I MARKUS<br>CARSON & COIL<br>515 EAST HIGH STREET<br>STE 401<br>JEFFERSON CITY, MO 65101 |
| Defendant/Respondent:<br>TEHUM CARE SERVICES, INC. D/B/A<br>CORIZON HEALTH, INC.<br>Nature of Suit:<br>CC Breach of Contract | Court Address:<br>PO BOX 1870<br>301 E HIGH ST<br>JEFFERSON CITY, MO 65101 |

RECEIVED

NOV 21 2022

COLE COUNTY
SHERIFF'S OFFICE

(Date File Stamp)

### Summons in Civil Case

**The State of Missouri to:   MISSOURI DEPARTMENT OF CORRECTIONS**
**Alias: MO DEPARTMENT OF CORRECTIONS**

**2729 PLAZA DRIVE**
**C/O ANNE PRECYTHE**
**JEFFERSON CITY, MO 65109**

*COURT SEAL OF*

*COLE COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

_Thursday, November 17, 2022_
Date                          Clerk                by tr

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☑ (for service on a corporation) delivering a copy of the summons and petition to: _R. Egger_ (name) _Designee_ (title).

☐ other: _____

Served at _2728 Plaza Dr._ (address)

in _Cole_ (County/City of St. Louis), MO, on _11/22/22_ (date) at _10:24 am_ (time).

_Sheriff John P Wheeler_  by  _Dep G Hutina 36_

Printed Name of Sheriff or Server           Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
                         Date                          Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (____ miles @ $.____ per mile) |
| Total | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (07-21) SM30 (SMCC) *For Court Use Only:* Document ID # 22-SMCC-2646 1 of 1 (22AC-CC07354)     Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

*Received*

## IN THE 19TH JUDICIAL CIRCUIT, COLE COUNTY, MISSOURI

SB
12-17

| Judge or Division:<br>JON EDWARD BEETEM | Case Number: 22AC-CC07354 |
|---|---|
| Plaintiff/Petitioner:<br>CAPITOL EYE CARE, INC. | Plaintiff's/Petitioner's Attorney/Address<br>BLAKE I MARKUS<br>CARSON & COIL<br>515 EAST HIGH STREET<br>STE 401<br>vs. JEFFERSON CITY, MO 65101 |
| Defendant/Respondent:<br>TEHUM CARE SERVICES, INC. D/B/A<br>CORIZON HEALTH, INC. | Court Address:<br>PO BOX 1870<br>301 E HIGH ST<br>JEFFERSON CITY, MO 65101 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

### Summons in Civil Case

**The State of Missouri to:** TEHUM CARE SERVICES, INC. D/B/A CORIZON HEALTH, INC.

Alias:

**120 SOUTH CENTRAL AVE.**
**CLAYTON, MO 63105**

30 (per letter)

**COURT SEAL OF**

CToC You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**COLE COUNTY**

*Thursday, November 17, 2022*

Date _____ Clerk _____ By tr

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☑ (for service on a corporation) delivering a copy of the summons and petition to: _____ (name) *Intake Specialist* (title).

☐ other: _____

Served at *CT CorP* **LCW - J. CHAPMAN** (address)

in *St Louis* (County/City of St. Louis, MO, on *12/1/22* (date) at *9:32* (time).

*Steven McSsenger*                          *Steven McSsenger*
Printed Name of Sheriff or Server            Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer.**

Subscribed and sworn to before me on _____ (date)

**(Seal)**

My commission expires: _____
Date _____ Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| Total | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (07-21) SM30 (SMCC) *For Court Use Only:* **Document ID # 22-SMCC-2644** 1 of 1 (22AC-CC07354)   Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Electronically Filed - Cole Circuit - December 05, 2022 - 12:50 PM



*Return*

# IN THE 19TH JUDICIAL CIRCUIT, COLE COUNTY, MISSOURI

| Judge or Division:<br>JON EDWARD BEETEM | Case Number: 22AC-CC07354 |
|---|---|
| Plaintiff/Petitioner:<br>CAPITOL EYE CARE, INC.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BLAKE I MARKUS<br>CARSON & COIL<br>515 EAST HIGH STREET<br>STE 401<br>JEFFERSON CITY, MO 65101 |
| Defendant/Respondent:<br>TEHUM CARE SERVICES, INC. D/B/A<br>CORIZON HEALTH, INC. | Court Address:<br>PO BOX 1870<br>301 E HIGH ST<br>JEFFERSON CITY, MO 65101 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

*SB*
*12-17*

## Summons in Civil Case

| The State of Missouri to: CHS TX, INC.<br>Alias: *Check one per letter* |
|---|

120 SOUTH CENTRAL AVE.
CLAYTON, MO 63105

**COURT SEAL OF**

**COLE COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| **Thursday, November 17, 2022** | |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☑ (for service on a corporation) delivering a copy of the summons and petition to: _____ (name) *Intake* _____ (title).

☑ other: _____

Served at *CT Corp* _____ (address)

in *St Louis* (County/City of St. Louis), MO, on *12/2/22* (date) at *0756* (time).

| *Steven McSweeney* | *Steven McSweeney* |
|---|---|
| Printed Name of Sheriff or Server | Signature of Sheriff or Server |

Must be sworn before a notary public if not served by an authorized officer.

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
| Date | Notary Public |

### Sheriff's Fees, if applicable

| Summons | $_____ |
|---|---|
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.