IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CAPITOL EYE CARE, INC., JEFFERSON CITY ORAL AND MAXILLOFACIAL SURGERY, L.L.C., CMMP SURGICAL CENTER, L.L.C., and MID-MISSOURI ANESTHESIA CONSULTANTS, P.C.,<br><br>Plaintiffs,<br><br>v.<br><br>TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., YESCARE CORP., AND STATE OF MISSOURI DEPARTMENT OF CORRECTIONS,<br><br>Defendants. | Civil Action No. 2:22-cv-04191-MDH<br><br>Removed from the Circuit Court of Cole County, Missouri<br>Case No. 22AC-CC07354<br><br>Class Action |

**DEFENDANT TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(e)**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

FACTS ............................................................................................................................................... 2

I. Dealings and contracts between Corizon and Plaintiffs ........................................................ 2

II. The 2022 Restructuring ........................................................................................................... 2

III. Plaintiffs' Claims ..................................................................................................................... 3

LEGAL STANDARDS ...................................................................................................................... 4

ARGUMENT ..................................................................................................................................... 5

I. Plaintiffs' breach claims are too vague to support a claim for relief. .................................. 5

II. The implied covenant of good faith and fair dealing does not supply a claim. ................... 6

III. Plaintiffs' fraud claims do not rest on actionable representations or particularized allegations. ................................................................................................................................ 8

IV. All of the fraudulent transfer claims fail on several essential points. ................................. 9

    A. No transfer occurred as a matter of law. ........................................................... 10

    B. Plaintiffs impermissibly rely on formulaic recitations to assert actual fraud. ...... 11

    C. Plaintiffs' allegations demonstrate that Corizon received reasonably equivalent value for any transfer. ............................................................................................. 11

V. Plaintiffs' various conspiracy claims all fail. ....................................................................... 12

CONCLUSION ................................................................................................................................ 12

CERTIFICATE OF SERVICE ........................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*555 M Mfg., Inc. v. Calvin Klein, Inc.*,
   13 F. Supp. 2d 719 (N.D. Ill. 1998) ...................................................................................... 6

*8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc.*,
   292 S.W.3d 439 (Mo. Ct. App. 2009) .................................................................................. 12

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
   949 F.3d 417 (8th Cir. 2020) .................................................................................................. 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 4, 6, 11

*Aveta Inc. v. Cavallieri*,
   23 A.3d 157 (Del. Ch. 2010) ................................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 6

*Bouchillon v. Deutz-Fahr*,
   268 F. Supp. 3d 890 (N.D. Miss. 207) ................................................................................. 10

*Central Dist. Alarm v. Hal-Tuc*,
   886 S.W.2d 210 (Mo. App. E.D. 1994) ................................................................................. 8

*Comprehensive Care Corp. v. RehabCare Corp.*,
   98 F.3d 1063 (8th Cir. 1996) .................................................................................................. 7

*Countrywide Servs. Corp. v. SIA Ins.*,
   Co., 235 F.3d 390 (8th Cir. 2000) .......................................................................................... 7

*East Coast Test Prep LLC v. Allnurses.com, Inc.*,
   971 F.3d 747 (8th Cir. 2020) .................................................................................................. 6

*Gorog v. Best Buy Co., Inc.*,
   760 F.3d 787 (8th Cir. 2014) .................................................................................................. 4

*Hager v. Ark. Dep't of Health*,
   735 F.3d 1009 (8th Cir. 2013) ................................................................................................ 4

*Level One Techs., Inc. v. Penske Truck Leasing Co.*,
   No. 4:14-CV-1305 RWS, 2018 WL 558428 (E.D. Mo. Jan. 25, 2018) .................................. 7

*Mo. Highways & Transp. Comm'n v. Westgrove Corp.*,
    364 S.W.3d 695 (Mo. Ct. App. 2012) ................................................................................12

*Moore v. Fidelity Fin. Servs., Inc.*,
    869 F. Supp. 557 (N.D. Ill. 1994) ........................................................................................6

*Outdoor Cent., Inc. v. GreatLodge.com, Inc.*,
    643 F.3d 1115 (8th Cir. 2011) .............................................................................................4

*Park Ridge Assocs. v. U.M.B. Bank*,
    613 S.W.3d 456 (Mo. Ct. App. 2020) ................................................................................12

*Payne v. Sec. Sav. & Loan Ass'n, F.A.*,
    924 F.2d 109 (7th Cir. 1991) .............................................................................................10

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
    322 S.W.3d 112 (Mo. banc 2010) ........................................................................................8

*Rock Port Market, Inc. v. Affiliated Foods Midwest Coop., Inc.*,
    532 SW.3d 180 (Mo. App. 2017) ........................................................................................7

*Rutter v. Carroll's Foods of Midwest, Inc.*,
    50 F. Supp. 2d 876 (N.D. Iowa 1999) .................................................................................5

*Siebert v. People's Bank*,
    632 S.W.3d 461 (Mo. App. 2021) .......................................................................................7

Standard Operations, Inc. v. Montague,
    758 S.W.2d 442 (Mo. 1988) (en banc) ................................................................................8

TXO Prod. Co. v. M.D. Mark, Inc.,
    999 S.W.2d 137 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ...................................10

Van Dyke Ford, Inc. v. Ford Motor Co.,
    399 F. Supp. 277 (E.D. Wisc. 1975) ...................................................................................6

*Western Blue Print Co., LLC v. Roberts*,
    367 S.W.3d 7 (Mo. 2012) (en banc) ..................................................................................12

*Yates v. Bridge Trading Co.*,
    844 S.W.2d 56 (Mo. Ct. App. 1992) ..................................................................................10

*Yerington v. Riss*,
    374 S.W.2d 52 (Mo. banc 1964) ..........................................................................................8

**Statutes**

MO. STAT. ANN. §§ 428.024, 428.029 .......................................................................................10

Mo. Stat. Ann. §§ 428.024.1(2) ........................................................................................... 11

Tex. Bus. Org. Code § 10.008(a)(2)(C) ............................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................................... 9, 11

Fed. R. Civ. P. 12 .................................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 1, 4

Fed. R. Civ. P. 12(e) ........................................................................................................ 1, 4, 6

# INTRODUCTION

Defendant Tehum Care Services, Inc. d/b/a/ Corizon Health Inc. ("Corizon") offers these Suggestions in support of its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e).

This putative class action contains no actionable claim. It arises from Corizon's provision of medical services to inmates under contract with the Missouri Department of Corrections ("MDOC"). Corizon entered into contracts with various medical providers under which the providers treated inmates and Corizon reimbursed the providers. Plaintiffs assert that they are providers who have not been reimbursed.

Instead of bringing straightforward contract claims, Plaintiffs have alleged a confusing web of contract claims that do not track what their contracts provide. They attach none of their contracts to their Petition and instead treat the different agreements as if there were one capital-A Agreement that controls. No such singular agreement exists. Instead, several different agreements with different terms covering different times and with different parties exist. Instead of engaging with these actual contracts, Plaintiffs gloss over all the distinctions. As a result, the contract claims cannot be squared with the reality of the parties' various agreements.

Instead of engaging with these controlling contracts, Plaintiffs dedicate most of their Petition to attacking a corporate restructuring involving Corizon and other parties so that Plaintiffs can assert claims against other companies who were involved in that restructuring. Without factual basis, and in the face of their own admissions that the restricting benefitted Corizon and its creditors in material ways, Plaintiffs allege that the restructuring was a fraud. They seek to enjoin the restructuring as a fraudulent transfer and to obtain damages for common law fraud. Instead of offering the particularized facts required to support fraud allegations, Plaintiffs rely on generalities

1

that cannot justify such extreme relief. And the restructuring that Plaintiffs challenge did not result in a transfer under controlling Texas statutory law.

The Court should dismiss Plaintiffs' claims against Corizon.

**FACTS**

**I.  Dealings and contracts between Corizon and Plaintiffs**

The first thread of this case is Plaintiffs' claim for payment. In broad terms, Corizon provided health care services to inmates under contract with the MDOC. Petition at ¶ 32. Corizon entered into contracts with various medical providers under which the providers treated inmates and Corizon reimbursed the providers. *Id*. at ¶ 33. Plaintiffs Capitol Eye Care, Inc. ("Capitol Eye"); Jefferson City Oral and Maxillofacial Surgery, L.L.C. ("JCOMS"); CMMP Surgical Center, L.L.C. ("CMMP"); and Mid-Missouri Anesthesia Consultants, P.C ("MMAC") assert that they are providers who have not been reimbursed. *Id*. at ¶¶ 132–33.

Contrary to Plaintiffs' use of the singular defined term "Agreement" (*id*. at ¶ 33), no single agreement or form agreement applies. Corizon (or predecessor entities called Correction Medical Systems or Correctional Medical Services, Inc.) executed different contracts with different providers governing different times. Composite Exhibit A contains some of the contracts between Plaintiffs and Corizon and its predecessors. Plaintiffs do not allege which of these contracts, or any other contract, Corizon is to have breached.

**II.  The 2022 Restructuring**

The second thread of this case is a corporate restructuring that took place in April and May of 2022. It compromised two parts. The first part was a combination merger through which Corizon Health converted to a Texas corporation and then merged with several of its affiliates: Corizon, LLC; Valitas Health Services, Inc.; and Corizon Health of New Jersey, LLC pursuant to

2

a plan of combination merger under Texas law. Petition at ¶ 62. The end result of the combination merger was that Corizon Health had all of the assets and liabilities of these merged entities. *Id.*

The second part of the restructuring was a divisional merger conducted pursuant to the Texas Business Organization Code ("TBOC") involving Corizon Health and CHS TX, Inc., a Texas corporation formed as part of the divisional merger. *Id*. at ¶ 62(d). Under the Plan of Merger (attached as Exhibit B), Corizon Health remained vested with all of its inactive or expired contracts, including the MDOC Contract, and the liabilities associated with those contracts. It also was allocated $1 million in cash, a conditional receivable of $4 million under a funding agreement, and the right to make claims on insurance policies belonging to the companies merged in the combination merger. Allocated to CHS TX, Inc. was, among other things, almost $100 million in senior secured debt that had previously encumbered all of Corizon Health's assets and left no value for unsecured creditors. Ex. B, at Schedule 4.01(a), p. 124. After the divisional merger became effective, CHS TX, Inc. was acquired by YesCare Corp, which completed the restructuring. Petition at ¶ 63. Corizon Health then changed its name to Tehum Care Services, Inc. *Id*. at ¶ 68.

### III.    Plaintiffs' Claims

Plaintiffs assert numerous claims trying to tie these two threads together. Against Corizon, Plaintiffs assert breach of contract and breach of the implied covenant of good faith and fair dealing arising from their alleged right to payment under the Agreement (Counts I & II). They also assert common law fraud and conspiracy to commit common law fraud (Count VII). Lastly, as to Corizon, they assert that the 2022 restructuring resulted in an actual and constructively fraudulent transfer (Counts VIII and X) and that the Defendants engaged in a conspiracy related to such transfer. (Counts IX and XI).

Plaintiffs assert these claims on behalf of a putative class of Missouri residents with a contract with Corizon related to the MDOC contract "[t]o whom [Corizon] did not make payment

3

Case 2:22-cv-04191-MDH    Document 16    Filed 01/06/23    Page 8 of 19

for provided healthcare services" and "[t]o whom [Corizon] still owes payment for provided healthcare services." Petition at ¶ 18.

## LEGAL STANDARDS

***Motion to Dismiss***.  To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A claim is plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. "Courts must not presume the truth of legal conclusions couched as factual allegations." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Mere labels and conclusions, or formulaic recitations of the elements of a cause of action, do not suffice. *Twombly*, 550 U.S. at 555.

"[C]ourts are not strictly limited to the four corners of [the] complaint[ ]." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011) (citation omitted). "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) (citation omitted). "The contract[ ] upon which a claim rests [is] evidently embraced by the pleadings." *Id*. (internal alterations and citation omitted).

***Motion for a More Definite Statement***.  Under Federal Rule of Civil Procedure 12(e), the Court has discretion to require Plaintiffs to provide a more definite statement of their claim

4

"require such detail as may be appropriate in the particular case." *Rutter v. Carroll's Foods of Midwest, Inc.*, 50 F. Supp. 2d 876, 887 (N.D. Iowa 1999) (citations and quotations omitted).

## ARGUMENT

**I.      Plaintiffs' breach claims are too vague to support a claim for relief.**

Plaintiffs allege that they "entered into hospital services agreements (the 'Agreement')" with Corizon (Petition at ¶ 33), but no Plaintiff executed a contract by that name with Corizon or a predecessor company. Instead, each Plaintiff has a different group of contracts with either Corizon or a predecessor entity. A sample of these contracts is attached as Composite Exhibit A.

These contracts have different terms, different amendments, and some feature hand-written and initialed changes. For example, one CMMP agreement has an entire payment section stricken out (p.15) and recognizes that all payments are subject to a cap provided in yet another agreement between Corizon's predecessor's agreement with the MDOC. *Id*. at § 3.1, p.4. Later amendments address some of the same topics, and CMMP has an "Ancillary Services Agreement" that purports to cover the parties' entire agreement on a prospective basis.

As relevant to Plaintiffs' claims, most of the agreements do not include the particular language regarding affiliates of Corizon that Plaintiffs put at the center of their claims. See, e.g., Petition at ¶ 34. Capitol Eye's "Off-Site Specialist Physician Independent Contractor Agreement" refers to Correctional Medical Services, Inc. as its counterparty with no affiliate language, as does the "Medical Group Services Agreement" between Correctional Medical Services, Inc. and MMAC—though these two agreements are not the same.

There is no singular agreement in this case. There are a series of agreements with different terms between various parties covering different times. Because Plaintiffs have premised their claims on identical agreements that do not exist, the Court can dismiss them on their face. Moreover, Plaintiffs' conclusory allegations regarding the terms and time period of the contract

5

are conclusory and are therefore insufficient to state a plausible claim for relief because they do not put Corizon on notice of what the basic facts of the claims. *See East Coast Test Prep LLC v. Allnurses.com, Inc.*, 971 F.3d 747, 753 (8th Cir. 2020) (affirming dismissal where plaintiff's complaint failed to properly that a contract existed). Plaintiffs' claims are merely consistent with the possibility that contracts were breached, and mere consistency is not enough. *Ashcroft*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Alternatively, the Court should order Plaintiffs to provide a more definite statement of their breach claim under Rule 12(e) because the allegations about the contracts at issue are "so vague or ambiguous that [Corizon] cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Corizon cannot admit or deny anything about what contract Plaintiff contends to govern the parties' relationships because Corizon cannot tell what contract(s) Plaintiffs contend to govern. "To survive a Rule 12(e) motion in a contract claim, the plaintiff must recite the relevant agreement, the basic contents of that agreement, and the pertinent parties." *Moore v. Fidelity Fin. Servs., Inc.*, 869 F. Supp. 557, 560–61 (N.D. Ill. 1994); *see also Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277, 284 (E.D. Wisc. 1975) (among other things, "the date of such agreements are proper subjects of a motion to make more definite"); *555 M Mfg., Inc. v. Calvin Klein, Inc.*, 13 F. Supp. 2d 719, 725 (N.D. Ill. 1998) (requiring more definite statement of the "basic contents" of the relevant agreements, among other things). Corizon is not seeking detailed specificity; a simple statement of the date and title of the contract(s) would suffice.

**II.  The implied covenant of good faith and fair dealing does not supply a claim.**

The covenant of good faith and fair dealing, implied in every contract, prevents a party from "exercise[ing] a judgment conferred by the express terms of the contract in such a manner

6

that evades the spirit of the transaction or denies the other party the expected benefit of the contract." *Countrywide Servs. Corp. v. SIA Ins.*, Co., 235 F.3d 390, 393 (8th Cir. 2000) (citations omitted). The covenant is not, as Plaintiffs treat it here, "an overflowing cornucopia of wished-for legal duties." *Rock Port Market, Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 SW.3d 180, 188 (Mo. App. 2017) (quoting *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo. App. 2009)). It "cannot give rise to new obligations not otherwise contained in a contract's express terms." *Siebert v. People's Bank*, 632 S.W.3d 461, 469 (Mo. App. 2021) (quoting *Jennings v. Bd. of Curators of Mo. State Univ.*, 386 S.W.3d 796, 798 (Mo. App. 2012)). And "[t]he implied covenant of good faith and fair dealing 'does not transform a business relationship into a fiduciary relationship.'" *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996) (quoting *W.K.T. Distrib. Co. v. Sharp Elecs. Corp.*, 746 F.2d 1333, 1337 (8th Cir. 1984)).

Plaintiffs identify no provision in any contract that Corizon is abusing. As to Corizon, Plaintiffs allege that they expected to be paid (Petition at ¶¶ 146–51), and that expectation could only arise from express contractual provisions regarding payment. Because Plaintiffs admit that the contracts' expressed terms cover the subject of payment, Plaintiffs cannot conscript the covenant to change those terms. Unique duties flowing from the covenant cannot "be imposed where the parties expressly address the matter at issue in their contract." *Level One Techs., Inc. v. Penske Truck Leasing Co.*, No. 4:14-CV-1305 RWS, 2018 WL 558428, at *5 (E.D. Mo. Jan. 25, 2018) (citation omitted).

In any event, the Missouri Supreme Court has held that parties contracting with corporations should expect mergers and take reasonable steps to protect themselves if they are concerned about a merger: "The possibility of merger is easily foreseeable…. A creditor or lessor

7

who fears merger may obtain the desired protection by insisting on express language." *Standard Operations, Inc. v. Montague*, 758 S.W.2d 442, 444 (Mo. 1988) (en banc) (citations omitted). The "risk" of a merger, if that term can even be used, is on any party that contracts with a corporation, so it is not a breach of the covenant of good faith and fair dealing to enter into a merger transaction.

### III. Plaintiffs' fraud claims do not rest on actionable representations or particularized allegations.

Plaintiffs' fraud-based claims fail because Plaintiffs cannot point to any false representation made by Corizon. Common-law fraud has nine elements under Missouri law: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. banc 2010).

*No representation*. Plaintiffs do not allege that Corizon made a representation. Paragraph 223 of the Petition refers to unidentified "representations to induce Plaintiffs to continue to perform...." (Petition at ¶ 223), but no actionable representation appears in the Petition. Plaintiffs would rely on vague assurances that Corizon would pay Plaintiffs under their respective contracts (Petition at ¶ 225) or Corizon's action in accepting and approving claims through its portal (id. at ¶ 73), but such promises to perform cannot support a fraud claim. Instead, a representation must relate to an existing fact, not a future breach of an obligation. *Yerington v. Riss*, 374 S.W.2d 52, 58 (Mo. banc 1964) ("[F]raud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve mere matters of futurity or things to be done or performed in the future."); *Central Dist. Alarm v. Hal-Tuc*, 886 S.W.2d 210, 213 (Mo.

8

App. E.D. 1994) ("The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into.").

*__Inadequate pleading__*.  Even if such a representation could support a fraud claim, Plaintiffs have not pleaded it with the requisite particularity.  Rule 9(b) (and its Missouri counterpart) require pleading fraud with particularity.  "The complaint must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020) (quoting *Schaller Tel. Co. v. Golden Sky Sys. Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)).  Colloquially, Plaintiffs must give the "'who, what, where, when, and how of the alleged fraud.'"  *Id*. (quoting *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)).  Plaintiffs do not provide this level of particularity to any of their allegations.  They allege vague inducements, but they do not allege *__any__* specific representation.

## IV. All of the fraudulent transfer claims fail on several essential points.

The 2022 restructuring that resulted in Corizon being released from liens encumbering all of its assets is not a fraudulent transfer—a fact established by the controlling Texas statute and confirmed by Plaintiffs' failure to plead any specific badges of fraud.  As a result, Counts Eights through Eleven should be dismissed.

### A. No transfer occurred as a matter of law.

The 2022 restructuring did not result in a transfer. A transfer is a required element of both actual and constructively fraudulent transfer claim. MO. STAT. ANN. §§ 428.024, 428.029. Under the applicable Texas statute,[1] divisional mergers categorically do not cause transfers:

> [A]ll rights, title, and interests to all real estate and other property owned by each organization is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger without:
>
> > (A) reversion or impairment;
> >
> > (B) any further act or deed; or
> >
> > (C) any transfer or assignment having occurred;....

TEX. BUS. ORG. CODE § 10.008(a)(2)(C). Texas courts have found that parties can contract around statutory provisions relating to transfers or assignments relating arising from mergers. *See TXO Prod. Co. v. M.D. Mark, Inc.*, 999 S.W.2d 137, 143 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("We also reiterate that the Texas Legislature intended by its amendments to the Business Corporations Act that a prohibited transfer would not be implied by merger but would only occur in the event the parties agreed that merger specifically violated an anti-assignment provision.").

---

[1] Texas law applies for two reasons. **First**, the effect of a statutory merger is governed by the statute under which the merger was effectuated. *See Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991) (looking to the "congressional scheme that governs the transfer of assets that took place" to determine the successor on the plaintiff's claim following a statutory receivership); *Bouchillon v. Deutz-Fahr*, 268 F. Supp. 3d 890, 905 (N.D. Miss. 207) (applying the law of Germany to questions concerning organization effect and successor liability following corporate asset transfer in Germany). **Second**, the divisional merger is an internal affair of Corizon, a Texas corporation. See *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 168 (Del. Ch. 2010) (stating "[t]he implementation and effectiveness of a merger between two corporations from the same jurisdiction is an internal corporate matter to be governed by the law of that jurisdiction...."). Under Missouri law, adjudicating the "internal affairs of a corporation ... [requires] the application of the laws of the state of incorporation." *Yates v. Bridge Trading Co.*, 844 S.W.2d 56, 61 (Mo. Ct. App. 1992).

Thus, Plaintiffs cannot establish the element of a transfer. The sole action on which they rest their transfer allegation—the 2022 restructuring—is, as a matter of law, not a transfer.

### B. Plaintiffs impermissibly rely on formulaic recitations to assert actual fraud.

As discussed above, Plaintiffs have not alleged fraud with anything approaching the required specificity. Instead, Plaintiffs give a bare recitation of the badges of fraud with no supporting, particularized facts. As the United States Supreme Court has put it, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' allegations are doubly insufficient because they fail to comply with Rule 9(b), which require all allegations of fraud to be pleaded with particularity.

### C. Plaintiffs' allegations demonstrate that Corizon received reasonably equivalent value for any transfer.

A transfer is constructively fraudulent if the party engaged in the transaction did not receive "reasonably equivalent value for the transfer." MO. STAT. ANN. §§ 428.024.1(2). The facts Plaintiffs allege show Corizon receiving considerable value. Plaintiffs admit that the divisional merger resulted in a secured creditor releasing liens that "had covered all assets of the respective debtors [*i.e.*, the companies merged in the combination merger into Corizon]." Petition at ¶ 67. In place of its security interest in all of Corizon's assets, the creditor asserted a security interest against the assets of CHS TX, Inc. and YesCare Corp. *Id.* at ¶ 66. This transaction unencumbered assets that Corizon could use to pay unsecured creditors—something it could not do before. These undisputed facts undercut Plaintiffs' naked assertion that Corizon did not receive reasonably equivalent value in the 2022 restructuring. The facts alleged show tremendous value received, and Plaintiffs' bald assertion that Corizon did not receive value is just a pure legal conclusion, not a factual allegation owed deference.

11

## V.     Plaintiffs' various conspiracy claims all fail.

Plaintiffs' civil conspiracy claims are not properly directed at Corizon, as conspiracy "is not a cause of action in and of itself; rather, it acts to hold the conspirators jointly and severally liable for the underlying act." *8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc.*, 292 S.W.3d 439, 451 (Mo. Ct. App. 2009). But, in any event, the conspiracy claims all fail because none of Plaintiffs' underlying claims have merit. "Civil conspiracy is not itself actionable in the absence of an underlying wrongful act or tort. If the underlying wrongful act alleged fails to state a cause of action, the civil conspiracy claim fails." *Park Ridge Assocs. v. U.M.B. Bank*, 613 S.W.3d 456, 464 (Mo. Ct. App. 2020) (citations omitted); *Mo. Highways & Transp. Comm'n v. Westgrove Corp.*, 364 S.W.3d 695, 702 (Mo. Ct. App. 2012).

Lastly, the conspiracy claims cannot be squared to the timeline of events, as they require Corizon to have conspired with entities that did not exist until the 2022 restructuring was executed. The core act Plaintiffs challenge is the transfer of assets that attended the divisional merger, but no other co-conspirators existed before the divisional merger. CHS TX, Inc. was formed in and as a result of the divisional merger; it did not exist until after the Plan of Merger was drafted. Corizon could not engage in a conspiracy to transfer assets to an entity that did not exist, as a conspiracy must necessarily precede the alleged wrong. In the Missouri Supreme Court's formulation of the elements of civil conspiracy, the "act in furtherance of the conspiracy" must occur "***after*** a meeting of the minds." *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012) (en banc) (emphasis added).

## CONCLUSION

The Court should dismiss Plaintiffs' complaint against Corizon or, at a minimum, require Plaintiffs to provide a more definite statement of what contract claims they claim to possess.

Respectfully submitted,

*/s/ R. Thomas Warburton*

R. Thomas Warburton (MO Bar No. 65477)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
205.521.8987
twarburton@bradley.com

*Counsel for Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc.*

13

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, a copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system. We provided copies to:

Blake I. Markus
CARSON & COIL, P.C.
515 East High Street
P.O. Box 28
Jefferson City, MO 65102

*Counsel for Plaintiffs*

Eliot Michael Gusdorf
Assistant Attorney General
815 Olive Street, Suite 200
St. Louis, MO 63101
(314) 340-7861
Eliot.Gusdorf@ago.mo.gov

*Counsel for Defendant MDOC*

Philip A. Cantwell
Adam J. Simon
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
pcantwell@dowdbennett.com
asimon@dowdbennett.com

*Counsel for Defendant CHS TX, Inc.*

                                                */s/ R. Thomas Warburton*
                                                R. Thomas Warburton