## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

CAPITOL EYE CARE, INC., JEFFERSON )
CITY ORAL AND MAXILLOFACIAL )
SURGERY, L.L.C., CMMP SURGICAL )
CENTER, L.L.C., and MID-MISSOURI )
ANESTHESIA CONSULTANTS, P.C., )
                                  )
      Plaintiffs,                  )          Case No. 2:22-cv-04191-MDH
                                    )
v.                                   )
                                    )
TEHUM CARE SERVICES, INC. d/b/a )
CORIZON HEALTH, INC., CHS TX, INC., )
YESCARE CORP., AND STATE OF )
MISSOURI DEPARTMENT OF )
CORRECTIONS, )
                                    )
      Defendants.              )

## CHS TX, INC.'S SUGGESTIONS IN SUPPORT
## OF MOTION TO DISMISS PLAINTIFFS' PETITION

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................1

BACKGROUND ...........................................................................................2

I.    Corizon Health's Agreements with Plaintiffs .....................................2

II.   The 2022 Corporate Restructuring......................................................3

      i.    The Combination Merger.............................................................3

      ii.   The Divisional Merger ................................................................3

LEGAL STANDARD....................................................................................5

ARGUMENT................................................................................................6

I.    The Court Lacks Personal Jurisdiction over CHS TX.........................6

      A.    The Court Lacks General Personal Jurisdiction Over CHS TX.............................7

      B.    The Court Lacks Specific Personal Jurisdiction Over CHS TX.............................7

II.   Plaintiffs' Claims Based on Their Contracts with Corizon Health Cannot Support Liability With Respect to CHS TX (Counts I, II and III). ....................................................9

      A.    Plaintiffs Fail to State a Claim for Breach of Contract or Breach of Covenant of Good Faith and Fair Dealing ...............................9

      B.    Plaintiffs Fail to Plead CHS TX is a Party to the Agreements ..............................11

III.  Plaintiffs Fail to State a Claim for Successor Liability (Counts III, IV, V and VI). .........13

      A.    Texas Law, Which Governs the Determination of Successor Liability, Provides That Liability for Plaintiffs' Claims Remain with Corizon Health. .......14

      B.    Plaintiffs' Successor Liability Theories are Unavailing .......................14

            1.    Texas Law provides that Corizon Health is Exclusively Liable on Plaintiffs' Claims (Count III). ...................................15

            2.    Plaintiffs Fail to State a De Facto Merger Claim (Count IV). ..................16

            3.    Plaintiffs Fail to State a Claim of Mere Continuation (Count V). .............17

i

4.      Plaintiffs' "Intent to Defraud Creditors" Claim Cannot Provide the Basis for Successor Liability (Count VI). ....................................................17

IV.    Plaintiffs Have Failed to State a Claim for Common Law Fraud or any Conspiracy Claim (Counts VII, IX, and XI). .........................................................................18

1.      Plaintiffs Fail to State a Claim for Common Law Fraud (Count VII). ......19

2.      Plaintiffs Fail to State a Claim for Fraudulent Transfer or Constructive Fraudulent Transfer (Counts VIII and X). ....................................................20

3.      Plaintiffs' Conspiracy Claims Fail as Matter of Law (Counts VII, IX and XI). .........................................................................................................24

CONCLUSION.............................................................................................................................25

CERTIFICATE OF SERVICE ....................................................................................................26

Case 2:22-cv-04191-MDH   Document 18   Filed 01/06/23   Page 3 of 34

# TABLE OF AUTHORITIES

## CASES             Page(s)

*1400 FM 1417 LLC v. CertainTeed Corp.*,
2022 WL 906192 (E.D. Tex. Mar. 28, 2022) ..........................................................................15

*Acetylene Gas Co. v. Oliver*,
939 S.W.2d 404 (Mo. App. E.D. 1996) ..................................................................................13

*Allied Home Mortg. Corp. v. Donovan*,
830 F. Supp. 2d 223 (S.D. Tex. 2011) ....................................................................................17

*A.T. v. Newark Corp.*,
WL 5070421 (E.D. Mo. Nov. 3, 2017) ....................................................................................13

*Avritt v. Reliastar Life Ins. Co.*,
615 F.3d 1023 (8th Cir. 2010) ................................................................................................10

*Badgett v. Security State Bank*,
807 P.2d 356 (Wash. 1991) ................................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................6

*Birkenmeier v. Keller Biomedical, LLC*,
312 S.W.3d 380 (Mo. App. E.D. 2010) ..................................................................................23

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) .............................................................................................................8

*CitiMortgage, Inc. v. K. Hovnanian Am. Mortg., L.L.C.*,
2013 WL 5355471 (E.D. Mo. Sep. 20, 2013) ........................................................................10

*Colonial Bank v. Ratican*,
806 S.W.2d 460 (Mo. App. E.D. 1991) ..................................................................................20

*Creative Walking, Inc. v. American States Ins. Co.*,
25 S.W.3d 682 (Mo. App. E.D. 2000) ..............................................................................24, 25

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..............................................................................................................6, 7

*Debord v. Nat'l Lloyds Ins. Co.*,
2015 WL 1526088 (E.D. Mo. Apr. 2, 2015) .................................................................9, 10, 11

iii

*Drobnak v. Andersen Corp.*,
  561 F.3d 778 (8th Cir. 2009) ........................................6, 19

*Flittie v. Solem*,
  775 F.2d 933 (8th Cir. 1985) ........................................24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) .............................. ...........7, 8

*Hallmark Cards, Inc. v. Monitor Clipper Partners*,
  LLC, 757 F. Supp. 2d 904 (W.D. Mo. 2010) ........................8

*Hampton v. American Family Mut. Ins. Co.*,
  624 S.W.2d 497 (Mo. App. E.D. 1981) ........................12

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ........................................7

*Higgins v. Ferrari*,
  474 S.W.3d 630 (Mo. App. W.D. 2015) ........................21, 24

*In re 1701 Commerce, LLC*,
  511 B.R. 812, 823-26 (Bankr. N.D. Tex. 2014) ........................18

*In re Bridge Info. Sys.*,
  325 B.R. 824 (Bankr. E.D. Mo. 2005) ........................14

*In re Channel Clarity Holdings LLC*,
  WL 2811901 (Bankr. N.D. Ill. July 18, 2022 ........................17

*Int'l Shoe Co. v. Washington*,
  326 U.S.310 (1945) ........................................7

*Jennings v. SSM Health Care St. Louis*,
  355 S.W.3d 526 (Mo. App. E.D. 2011) ........................20, 21, 23

*Keveney v. Missouri Military Academy*,
  304 S.W.3d 98 (Mo. banc 2010) ........................9, 10

*Konopasek v. Konopasek*,
  WL 417071 (Mo. App. S.D. Sept. 13, 2022) ........................21

*K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.*,
  648 F.3d 588 (8th Cir. 2011) ........................5

*Lockheed Martin Corp. v. Gordon*,
  16 S.W.3d 127 (Tex. App.—Houston [1st Dist.] 2000) ........................16

iv

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
    WL 2386635 (N.D. Cal. May 30, 2013) .................................................................25

*Montgomery Bank, N.A. v. First Horizon Home Loan Corp.*,
    2010 WL 1712848 (E.D. Mo. Apr. 26, 2010) .......................................................14

*Motor Components, LLC v. Devon Energy Corp.*,
    338 S.W. 3d 198 (Tex. App.—Houston [14th Dist.] 2011) ...................................17

*Mudgett v. Paxson Mach. Co.*,
    709 S.W.2d 755 (Tex. App.—Corpus Christi [13th Dist.] 1986) ...........................17

*Park Ridge Assocs. v. U.M.B. Bank*,
    613 S.W.3d 456 (Mo. App. E.D. 2020) ...............................................................18

*Pat & Larry Invs., LLC v. Master Wholesale & Vending Supply, Inc.*,
    2022 WL 1471359 (E.D. Mo. May 10, 2022) .......................................................12

*Payne v. Sec. Sav. & Loan Ass'n, F.A.*,
    924 F.2d 109 (7th Cir. 1991) ...............................................................................14

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
    322 S.W.3d 112 (Mo. banc 2010) .......................................................................19

*Schauer v. Gundaker Movits Real Estate Co.*,
    813 S.W.2d 112 (Mo. App. E.D. 1991) ...............................................................20

*Shapolsky v. Brewton*,
    56 S.W.3d 120 (Tex. App.—Houston [14th Dist.] 2001) ..............................16, 18

*State ex rel. Cedar Crest Apartments, LLC v. Grate*,
    577 S.W.3d 490 (Mo. banc 2017) ...................................................................8, 13

*State ex rel. Elson v. Koehr*,
    856 S.W.2d 57 (Mo. banc 1993) .........................................................................13

*State ex rel. Norfolk S. Ry. Co. v. Dolan*,
    512 S.W.3d 41 (Mo. banc 2017) ......................................................................6, 7

*State ex rel. Sperandio v. Clymer*,
    581 S.W.2d 377 (Mo. banc 1979) .........................................................................8

*State v. May*,
    43 S.W. 637 (Mo. 1897) .....................................................................................24

*Stretza v. S. Nev. Culinary & Bartenders Pension Plan*,
    WL 2654974 (W.D. Mo. July 8, 2022) ..................................................................6

*Texas v. American Tobacco Co.*,
    441 F. Supp.3d 397 (E.D. Tex. Feb. 25, 2020) ........................................................16

*TFT Galveston Portfolio, Ltd. v. C.I.R.*,
    144 T.C. 96, 113 (T.C. Feb. 26, 2015) ...................................................................17

*Velez v. Portfolio Recovery Assocs. Inc.*,
    881 F. Supp.2d 1075 (E.D. Mo. 2012) ....................................................................5

*Williams v. Belgrade State Bank*,
    953 S.W.2d 187 (Mo. App. S.D. 1997) ..................................................................20

*Wong v. Bann-Cor Mortg.*,
    WL 2314198 (W.D. Mo. June 9, 2011) ....................................................................7

*Yerington v. Riss*,
    374 S.W.2d 52 (Mo. banc 1964) ............................................................................19

## STATUTES AND OTHER AUTHORITY

28 U.S.C. § 1332(d) ...................................................................................................1, 7

6 Del. C. § 18-217(b)-(c) .............................................................................................15

15 Pa. Cons. Stat. § 361 ...............................................................................................15

Ariz. Rev. Stat. § 29-2601 ............................................................................................15

Curtis W. Huff, *The New Texas Business Corporation Act Merger Provisions*, 21 ST. MARY'S
L.J. 109, 110 (1989) ..................................................................................................15

RSMo 2016 § 506.500 ...................................................................................................8

RSMo 2022 § 351.582 .................................................................................................14

RSMo 2022 § 428.024 .............................................................................................21, 23

RSMo 2022 § 428.029 ................................................................................. ........24

Tex. Bus. Orgs. Code § 5.10(B) ...................................................................................16

Tex. Bus. Orgs. Code § 10.008 ....................................................................................16

Tex. Bus. Orgs. Code § 10.008(a)(2)(C) .....................................................................21

Tex. Bus. Orgs. Code § 10.008(a)(3) and (4) ..........................................................15, 16

Tex. Bus. Orgs. Code § 10.254.....................................................................................16

Case 2:22-cv-04191-MDH   Document 18   Filed 01/06/23   Page 7 of 34

Tex. Bus. Orgs. Code § 10.254(b)...............................................................................................17, 18

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ..............................................................................................6, 19, 21, 23

Fed. R. Civ. P. 12(b)(2) ..................................................................................................1, 5, 6

Fed. R. Civ. P. 12(b)(6) ......................................................................................................1, 6

Restatement (Second) of Agency §§ 12, 13, 14.............................................................13

Restatement (Second) of Conflict of Laws § 302 .........................................................14

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), CHS TX, Inc. ("CHS TX") respectfully seeks dismissal of Plaintiffs' *Petition* (the "Petition").

## PRELIMINARY STATEMENT

Plaintiffs' thirteen-count Petition against Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Corizon Health"), CHS TX, YesCare Corp. ("YesCare"), and the State of Missouri Department of Corrections (the "MDOC"), which was removed by Corizon Health to this Court on December 30, 2022 pursuant to 28 U.S.C. § 1332(d), alleges breach of contract, successor liability, and fraud and conspiracy against CHS TX.

CHS TX, however, is not a proper party to this breach of contract claim against Corizon Health. To try and make CHS TX responsible for Corizon Health's alleged debts, Plaintiffs ask this Court to take two extraordinary steps: First, exercise jurisdiction over a Texas entity (CHS TX) with no Missouri contacts. Second, apply *Missouri* law to unwind a validly executed *Texas* law-governed corporate transaction and hold CHS TX liable for Corizon Health's debt— something not allowed by the Texas law Plaintiffs seek to avoid.

The consequences of accepting Plaintiffs' novel invitation are far-reaching. If the Court accepts Plaintiffs' theory, it will pave the way for any future creditor in Missouri to drag foreign entities into Missouri courts and apply Missouri law to void validly executed out-of-state transactions. Missouri law, however, does not sweep so broadly. This Court should instead dismiss the Petition with respect to CHS TX for any of four reasons: (1) it lacks personal jurisdiction over CHS TX; (2) the alleged Hospital Service Agreements between Plaintiffs and Corizon Health provide no basis to sue CHS TX; (3) successor liability is determined under Texas law, not Missouri, and CHS TX cannot be held liable as successors under Texas law for the debts of Corizon Health; and (4) Plaintiffs have failed to state their fraud and conspiracy claims.

# BACKGROUND

## I.    Corizon Health's Agreements with Plaintiffs.

Corizon Health provided health care for inmates pursuant to a contract with the Missouri Department of Corrections.[1]  Plaintiffs claim to each have contracted with Corizon Health through Hospital Services Agreements (the "Agreements") to provide healthcare services to inmates under the umbrella of Corizon Health's contract with MDOC.[2]

Plaintiffs allege these Agreements (or the amendments thereto) contained language defining the term "Corizon Health" to refer to "Corizon, Inc. . . . acting for itself or on behalf of any/all/other affiliated companies."[3]  They further allege the term "Affiliated Entities" is defined in the Agreements as "any entity who directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health."[4]  Plaintiffs provide no other language from the Agreements, and do not attach them as exhibits to the Petition.

Corizon Health and Plaintiffs allegedly performed on the agreement with MDOC through the contract's expiration in November 2021.[5]  Plaintiffs allege that Corizon Health began defaulting on payments of claims for performances rendered in 2020.[6]  Plaintiffs further allege that Corizon Health's online portal continued to approve their claims until some point in 2021.[7]  Yet, Plaintiffs do not specify how many claims they filed, the claimed value of these claims, when they filed them, the nature of the services they performed, or what it meant for their claims to be "approved" through the online portal.  Moreover, they also have not attached or quoted relevant

---

[1] *See* Petition ¶ 32.  By citing the alleged facts in the Petition, CHS TX does not admit that such alleged facts are true or that they have any knowledge regarding those alleged facts.
[2] *Id.* ¶¶ 1-4, 35.
[3] *Id.* ¶ 160.
[4] *See id.* ¶¶ 34, 161.
[5] *Id.* ¶ 57.
[6] *See id.* ¶¶ 72-73.
[7] *Id.* ¶ 74.

portions of the Agreements governing the claims process, nor any copies of representative claims.

## II. The 2022 Corporate Restructuring.

### i. The Combination Merger

In Spring of 2022, Corizon Health and several of its affiliates—Corizon, LLC (formerly a Missouri limited liability company), Valitas (formerly a Delaware corporation), and Corizon Health of New Jersey, LLC ("Corizon NJ") (formerly a New Jersey limited liability company) (collectively, the "Company")—took steps towards a corporate reorganization (the "2022 Corporate Restructuring").[8]  The 2022 Corporate Restructuring was effectuated through two merger transactions under the Texas Business Organizations Code ("TBOC"): a Combination Merger and a Divisional Merger.  The following steps comprised the Combination Merger:

- On April 28, 2022, Corizon Health and its parent company, Valitas, converted to Texas corporations.[9]

- Each of Corizon Health, Corizon, LLC, Valitas, and Corizon NJ merged pursuant to a plan of combination merger under Texas law (the "Combination Merger").[10]

- Corizon Health was the sole survivor of the Combination Merger and was vested with all assets and liabilities of the merged entities.  The other entities ceased to exist.[11]

### ii. The Divisional Merger

With all assets and liabilities of the Company having been allocated to Corizon Health under the Combination Merger, Corizon Health then completed a divisional merger (the "Divisional Merger"), whereby, under the TBOC, all assets and liabilities of Corizon Health were allocated between Corizon Health and CHS TX, a Texas corporation formed through the Divisional Merger.[12]  The following steps comprised the Divisional Merger:

- Corizon Health drafted the Plan of Merger, which provided that CHS TX would be formed

---

[8] *Id.* ¶¶ 6, 62.
[9] *Id.* ¶ 62(b).
[10] *Id.* ¶ 62(c).
[11] *Id.* ¶ 62(c); 63.
[12] *See id.* ¶¶ 62(d), 63.

and documented which assets and liabilities were to remain with Corizon Health and which were to be allocated to CHS TX;

- The approved Plan of Merger was in writing and included all information required by the TBOC;

- Corizon Health filed the Certificate of Merger and Certificate of Formation for CHS TX with the Texas Secretary of State on May 3, 2022, and the Divisional Merger became effective on May 5, 2022.

- On May 11, 2022, the Texas Secretary of State approved and accepted the Certificate of Merger and Certificate of Formation for CHS TX, effective as of May 5, 2022.

After that, YesCare acquired CHS TX and the 2022 Corporate Restructuring was completed. Corizon Health changed its name to Tehum Care Services, Inc.[13] As a result of the 2022 Corporate Restructuring, Corizon Health was allocated and remained vested with all inactive or expired customer contracts—including Plaintiffs' contracts which had allegedly always been an asset of Corizon Health or Corizon, LLC—as well as all liabilities related to such contracts.[14] Corizon Health was also allocated and remained vested with, among other assets, (i) $1 million in cash,[15] (ii) a receivable, subject to certain conditions being met, of $4 million under a $15 million total funding commitment (the "Funding Agreement") provided by M2 LoanCo, LLC ("M2 LoanCo"), an affiliate of Corizon Health and (iii) the right to make claims on any and all of the Company's medical malpractice, general liability, or errors and omissions insurance policies relating to or arising from the assets it acquired or retained through the merger (including the contracts at issue in Plaintiffs' case).[16] Critically, through the Divisional Merger, Corizon Health

---

[13] *Id.* ¶¶ 62(d), 68.
[14] *Id.* ¶ 63.
[15] *Id.* ¶ 63.
[16] *See* Ex. 1, Agreement and Plan of Divisional Merger at 6 ¶ 13 (identifying insurance policy rights assigned to Corizon Health); *id.* at Schedule 3.01(b) (same). Despite Plaintiffs' acknowledgement that they "derived several of the factual allegations" in their Petition from the allegations in the Amended Petition in case number 22BA-CV01701-01 in Boone County, Missouri Circuit Court (the "Boone County Matter"), Plaintiffs did not attach any of the transaction documents appended to the Boone County Matter's Amended Petition on which their allegations are now based. Exhibit 1 to these Suggestions is the "Agreement and Plan of Divisional Merger" referenced in this Petition, which was also attached to the Amended Petition in the Boone County Matter as Exhibit 12.

was also released from nearly $100 million of senior secured debt, which, prior to the 2022 Corporate Restructuring, had encumbered all of the Company's assets and left no value for unsecured creditors. Ex. 1 (Schedule 4.01(a)(1)). The Divisional Merger therefore allowed Corizon Health's unsecured creditors the ability to assert claims against Corizon Health's assets without remaining subordinate in right of payment to nearly $100 million of secured debt. *Id.* Corizon Health's secured debt obligations were allocated to, and remain liabilities of, CHS TX through the Divisional Merger. *Id.*

The 2022 Corporate Restructuring was the subject of a fairness opinion rendered by FTI Capital Advisors LLC ("<u>FTI</u>"), which determined that the 2022 Corporate Restructuring was fair to the Company's unsecured creditors. Specifically, FTI compared potential recoveries for unsecured creditors under the then-proposed 2022 Corporate Restructuring to recoveries in a liquidation or a bankruptcy. The FTI opinion determined that unsecured creditors would have access to equal or greater recoveries if the Company completed the 2022 Corporate Restructuring due to the release of Corizon Health's secured debt, Corizon Health's access to the insurance policy, and its access to the M2 LoanCo receivable.

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2), a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support a "reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *Velez v. Portfolio Recovery Assocs., Inc.*, 881 F. Supp. 2d 1075, 1080 (E.D. Mo. 2012) (citing *K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011)). "The party espousing jurisdiction carries the ultimate burden of proof . . . ." *Id.* Personal jurisdiction in a diversity case exists "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *K-V Pharm. Co.* 648 F.3d at 592.

To survive a motion to dismiss under Federal Rule 12(b)(6), a complaint must include sufficient factual allegations to provide support for the claims.  *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  The facts alleged "must be enough to raise a right to relief above the speculative level" and must "state a claim to relief that is plausible on its face."  *Id.* at 555, 568.  Courts are not bound to accept legal conclusions couched as factual allegations.  *Id.* at 555.  When deciding a Rule 12(b)(6) motion, a court may consider "[d]ocuments referenced in a complaint and filed with the court while briefing a defendant's motion to dismiss" since they "are 'embraced' by the complaint."  *Stretza v. S. Nev. Culinary & Bartenders Pension Plan*, 2022 WL 2654974, *2 (W.D. Mo. July 8, 2022).

Additionally, Fed. R. Civ. P. 9(b) requires that circumstances constituting fraud be pled with particularity.  To satisfy this requirement, the complaint must plead the "who, what, where, when, and how" of the alleged fraud; "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted).

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction over CHS TX.

"Personal jurisdiction is the authority of a court over the parties in a particular case. . . . The basis of a court's personal jurisdiction over a corporation can be general—that is, all-purpose jurisdiction—or it can be specific—that is, conduct-linked jurisdiction."  *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 46 (Mo. banc 2017).  General personal jurisdiction exists when an entity's contacts with the forum state are "so substantial and of such a nature as to render the corporation at home in that State."  *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)).  Specific jurisdiction encompasses cases where "the suit arises out of or relates to the defendant's contacts with the forum."  *Id.* at 48 (quoting *Daimler*, 571 U.S. 117, 118).  In a case

6

removed under 28 U.S.C. § 1332(d), Court may "turn immediately to the question of whether the assertion of personal jurisdiction would violate due process." *Wong v. Bann-Cor Mortg.*, 2011 WL 2314198, *5 (W.D. Mo. June 9, 2011).

CHS TX is not subject to general or specific personal jurisdiction in Missouri.

**A.      The Court Lacks General Personal Jurisdiction Over CHS TX.**

A court may exercise general personal jurisdiction over foreign corporations where their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  This threshold is quite high: "[a] court normally can exercise general jurisdiction over a corporation only when the corporation's place of incorporation or its principal place of business is in the forum state." *Norfolk S. Ry.*, 512 S.W.3d at 46.  In determining a corporation's principal place of business, a court looks to the location of its "nerve center,"—usually its corporate headquarters— which is defined as "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

Plaintiffs have alleged no facts to suggest that CHS TX is subject to general personal jurisdiction in Missouri.  *See* Pet. ¶¶ 7-8.  Plaintiffs do not (and could not) allege it is incorporated in Missouri, headquartered in the state, or that Missouri is its "principal place of business."  *See Norfolk S. Ry.*, 512 S.W.3d at 46.  Plaintiffs allege the opposite: CHS TX's state of incorporation is Texas and its principal place of business is Tennessee. *See* Pet. ¶¶ 7-8, 62(a), (d).  In accordance with *Daimler* and *Norfolk S. Ry.*, no general personal jurisdiction exists over CHS TX in Missouri.

**B.      The Court Lacks Specific Personal Jurisdiction Over CHS TX.**

Missouri's long-arm statute extends specific jurisdiction "as to any cause of action arising from the doing of any of such acts: (1) The transaction of any business within this state; (2) The

making of any contract within this state; (3) The commission of a tortious act within this state . . ." § 506.500.1, RSMo 2016. Constitutional due process is satisfied where the defendant "purposefully availed" itself of Missouri, the plaintiff's claims "arise out of or relate to" the defendant's Missouri contacts, and the exercise of jurisdiction is reasonable. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1785-86 (2017); *see also State ex rel. Cedar Crest Apartments, LLC v. Grate*, 577 S.W.3d 490, 493 (Mo. banc 2017) (foreign corporation needs "at least one contact with this state *and* the cause of action being pursued arises out of that contact.")

In an attempt to haul CHS TX into this Court, Plaintiffs allege their claims arise from "Defendants' (1) transaction of business within Missouri; (2) making of contracts within Missouri; and (3) commission of tortious acts within this state." Pet. ¶ 11. However, the Petition makes clear that only **Corizon Health** conducted business in this state, Plaintiffs' contracts are with **Corizon Health**, and that **Corizon Health** is alleged to have committed various tortious acts. *See, e.g*, Pet. ¶ 33 (discussing the signing of the Agreements between Plaintiffs and Corizon Health); ¶ 72 (alleging Corizon Health did not pay certain claims); ¶ 73 (alleging Corizon Health's online portal continued to approve claims). But Corizon Health, CHS TX (and YesCare) are separate corporations; Corizon Health's jurisdictional contacts cannot be attributed to CHS TX (or YesCare). *See, e.g.*, *Goodyear*, 564 U.S. at 915 (not extending specific personal jurisdiction to foreign subsidiaries of an in-state parent); *Cedar Crest Apartments*, 577 S.W.3d at 495-96 (same).

Plaintiffs' conspiracy allegations are not a sufficient independent basis for this Court to extend personal jurisdiction over CHS TX, either. *See, e.g.*, *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 912 n.1 (W.D. Mo. 2010) ("While many cases establish that a party can be liable for a co-conspirator's actions, it does not appear that Missouri law imposes personal jurisdiction on a party based solely on a co-conspirator's action."); *State ex*

*rel. Sperandio v. Clymer*, 581 S.W.2d 377, 383-84 (Mo. banc 1979).

There are no other bases for asserting specific personal jurisdiction over CHS TX. Crucially, Plaintiffs have not alleged that CHS TX has any contacts with Missouri post-dating the 2022 Corporate Restructuring. That should end the personal jurisdiction inquiry for CHS TX.

## II. Plaintiffs' Claims Based on Their Contracts with Corizon Health Cannot Support Liability With Respect to CHS TX (Counts I, II and III).

Plaintiffs' first three claims, for Breach of Contract (Count I), Breach of Covenant of Good Faith and Fair Dealing (Count II), and Successor Liability: Express and/or Implied Agreement to Assume Debts and/or Liabilities (Count III) cannot succeed based on the out-of-context snippets from the Agreements that they cite in their Petition. *See* Pet. ¶¶ 33-34, 140, 160-161. This is for two independent reasons. First, Plaintiffs do not adequately plead that any contract was breached at all. Second, Plaintiffs simply do not allege that CHS TX was bound by any contract Plaintiffs signed with Corizon Health.

### A. Plaintiffs Fail to State a Claim for Breach of Contract or Breach of Covenant of Good Faith and Fair Dealing.

All of Plaintiffs' claims are ultimately traceable to the Agreements they allege are binding upon Corizon Health. Yet Plaintiffs neither attach the Agreements nor allege the actual terms or provisions they claim entitle them to relief. As a result, they have not alleged sufficient facts to support a claim for any breach of those Agreements.

"A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Debord v. Nat'l Lloyds Ins. Co.*, 2015 WL 1526088, at *1 (E.D. Mo. Apr. 2, 2015) (quoting *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. banc 2010)). However, a party does not state a claim for breach of contract where the claim does not set out the claimant's rights

or defendants' obligations under the contract. *Id.* Thus, in *Debord* the court dismissed a breach of contract claim where the plaintiff did not attach the contract and did not identify the specific provisions of the contract that entitled them to relief. *Id.* at *2. Similarly, as to Plaintiffs' second claim, the duty of good faith and fair dealing is a "contractual claim" that also depends on the express terms of the contract. *CitiMortgage, Inc. v. K. Hovnanian Am. Mortg., L.L.C.*, 2013 WL 5355471, at *4 (E.D. Mo. Sep. 20, 2013). This duty is a "gap filler" that applies when a party acts under the express terms of a contract, while evading its spirit to deny the other party the benefit of the contract. *Id.* at 4. There is no "free-floating duty of good faith unattached to the underlying legal document." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1031 (8th Cir. 2010) (quoting *Badgett v. Security State Bank*, 807 P.2d 356, 360 (Wash. 1991)).

Here, the extent of Plaintiffs' allegations are that each of them signed contracts with Corizon Health containing "substantially similar" (Pet. ¶ 139) or "similar terms regarding payment of healthcare services" (Pet. ¶ 33); Plaintiffs were to submit claims electronically for repayment within 60 days (Pet. ¶¶ 35-39); these Agreements were "valid and enforceable" (Pet. ¶¶ 123, 139); Plaintiffs substantially completed their obligations "under the terms of the Agreement," submitted claims "pursuant to the terms of the Agreement," and requested payment for services rendered "pursuant to the terms of the Agreement" (Pet. ¶¶ 129-131); and Corizon Health failed to pay outstanding claims and for services rendered (Pet. ¶¶ 131-135). Plaintiffs do not quote a ***single word*** from the Agreements to support any of these allegations. They do not provide the Agreements themselves so the Court can determine if they are "substantially similar," do not provide the terms of their own performance under the Agreement, do not provide the relevant conditions precedent, do not provide the contractual language regarding the claims process, and do not provide the contractual language regarding Corizon Health's requirements for performance.

Nor do they provide contractual language sufficient for this Court to determine the Agreements were "valid and enforceable." Moreover, the omission of express contractual terms makes it impossible to discern which contractual obligations Plaintiffs accuse Corizon Health of evading in spirit, while following to the letter. *See Debord*, 2015 WL 1526088, at *2 (dismissing claim for breach of contract because plaintiffs failed to identify their rights and obligations under the insurance policy).

As a result of the complete absence of not only the Agreements themselves, but also any specific terms or obligations in the Agreements, Plaintiffs have not stated a claim for either of their first two Counts.

### B. Plaintiffs Fail to Plead CHS TX is a Party to the Agreements.

Plaintiffs' three contract claims must be dismissed as to CHS TX for the additional reason that they do not plead facts indicating CHS TX is a party to the Agreements or liable for the alleged breaches of contract.

First, Plaintiffs do not explain how Corizon Health bound CHS TX (or YesCare) to any contractual successor liability through the Agreements, since neither existed at the time they supposedly were entered into. Plaintiffs allege the Agreement defines "Affiliated Entity" to mean "any entity who directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health."[17] This language is in the present tense. Yet neither CHS TX (nor YesCare) could have been "Affiliated Entities" at the time the parties signed the Agreements—Plaintiffs do not specify when Corizon Health signed each Agreement, but the Petition indicates all of them predate 2020, before YesCare's incorporation. *See* Pet. ¶¶ 44, 62(a). And Plaintiffs do not allege facts indicating this definition was forward-

---

[17] Pet. ¶ 34.

looking so as to encompass not-yet-created entities.

Second, even if CHS TX could be one of the supposed "Affiliated Entities" under the Agreements (and it could not be), Plaintiffs do not allege facts indicating the Agreements assigns "Affiliated Entities" responsibility for Corizon Health's liabilities. The language Plaintiffs quote does not do so. Plaintiffs state "Corizon Health" is defined as "Corizon, Inc . . . acting for itself *or* on behalf of any/all/other affiliated companies" (emphasis added). That language is disjunctive; it does not mean that Corizon, Inc. *is* acting on behalf of any particular party. Rather, on its face, it simply states that the defined term "Corizon Health" refers to either (i) Corizon, Inc. or (ii) the affiliated companies on whose behalf Corizon Inc. happens to be acting, if any.

Furthermore, though Plaintiffs assert as the basis for successor liability that the "Affiliated Entities" of Corizon Health "expressly or impliedly agreed to assume the debts and/or liabilities of Corizon, Inc. and Corizon, LLC, Plaintiffs point to no contractual language as the basis for this assumption of debts or liabilities. Pet. ¶ 161. For example, Plaintiffs do not allege that the Agreements contain language stating obligations are enforceable against any "Affiliated Entities," or anything to that effect. The allegation that all "Affiliated Entities" assumed Corizon Health's debts and liabilities is therefore a mere legal conclusion, not a factual pleading. *See, e.g., Pat & Larry Invs., LLC v. Master Wholesale & Vending Supply, Inc.*, 2022 WL 1471359, at *5 (E.D. Mo. May 10, 2022) (dismissing breach of contract claims where plaintiffs' interpretation of contract was not supported by specific provisions or facts and were therefore nothing more than "legal conclusions").

Additionally, Plaintiffs have alleged no facts to indicate Corizon Health acted as an agent of CHS TX to bind CHS TX to the Agreement. It is a basic corporate law principle that, even if two corporations are related, the actions of one cannot normally be attributed to the other. *See,*

*e.g*, *Hampton v. American Family Mut. Ins. Co.*, 624 S.W.2d 497, 498 (Mo. App. E.D. 1981). An exception is an agency relationship. *See, e.g.*, *A.T. v. Newark Corp.*, 2017 WL 5070421 at *3 (E.D. Mo. Nov. 3, 2017) (citing *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 60 (Mo. banc 1993)). The essential elements of an agency relationship are that "'an agent holds a power to alter legal relations between the principal and a third party,' (2) 'an agent is a fiduciary with respect to matters within the scope of the agency,' and (3) 'a principal has the right to control the conduct of the agent with respect to matters entrusted to the agent . . . .'" *Id.* at *4 (quoting *Elson*, 856 S.W.2d at 60 and citing Restatement (Second) of Agency §§ 12, 13, 14)).

Plaintiffs allege no facts indicating Corizon Health was vested with the agency authority to bind any other entity, much less CHS TX, to the Agreements. The language Plaintiffs point to in the Agreements does not, on its face, impose any kind of agency relationship that did not previously exist. It certainly provides no indication that any other entity granted Corizon Health the power to bind it to successor liability. And with respect to CHS TX (and YesCare) specifically, Plaintiffs could not bind them to the Agreements at a time when they did not yet exist. *See, e.g,* *Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 412 (Mo. App. E.D. 1996) (explaining that the typical rule is that "[a] corporation is not liable on a contract made prior to its incorporation").

Because the Agreements do not apply to any party except Corizon Health, they could not serve as a basis for specific personal jurisdiction over CHS TX (or YesCare), even if they are "affiliates." *See, e.g.*, *Cedar Crest Apartments*, 577 S.W.3d at 495-96 (explaining that, as a general rule, the jurisdictional contacts of a corporation cannot be attributed to its affiliates).

### III. Plaintiffs Fail to State a Claim for Successor Liability (Counts III, IV, V and VI).

Plaintiffs also fail to state a claim on their remaining theories. ***Texas***—not Missouri—law governs questions of successor liability arising from the 2022 Corporate Restructuring, and that law provides that liability remains with Corizon Health.

## A. Texas Law, Which Governs the Determination of Successor Liability, Provides That Liability for Plaintiffs' Claims Remains with Corizon Health.

Texas law applies to the Court's analysis regarding the 2022 Corporate Restructuring. Following a statutory merger, courts look to the governing statute to determine the effect of that merger, including on issues of liability and on the post-merger corporation's structure. *See Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991) (looking to the "congressional scheme that governs the transfer of assets that took place" to determine the successor on the plaintiff's claim following a statutory receivership).

Furthermore, under Missouri choice-of-law rules, the law of the state of incorporation (here, Texas) applies to "internal affairs" including mergers, consolidations, and reorganizations. *See* § 351.582, RSMo 2022 ("This chapter does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state.");[18] Accordingly, this Court must look to the TBOC to determine which entity resulting from the 2022 Corporate Restructuring bears liability in connection with Plaintiffs' claims.

## B. Plaintiffs' Successor Liability Theories are Unavailing.

Under Texas law, Plaintiffs have failed to state any of their three non-contractual claims for successor liability—Counts IV (De Facto Merger), V (Mere Continuation), and VI (Intent to Defraud Creditors).

---

[18] *See also Montgomery Bank, N.A. v. First Horizon Home Loan Corp.*, No. 4:09CV01334 ERW, 2010 WL 1712848 at *1 (E.D. Mo. Apr. 26, 2010) ("[T]he internal affairs doctrine, a conflict of laws principle, generally provides that the law of the state of incorporation governs a corporation's internal affairs[.]"); *In re Bridge Info. Sys.*, 325 B.R. 824, 830 (Bankr. E.D. Mo. 2005) ("Missouri courts generally apply the internal affairs doctrine with respect to disputes involving the administration or governance of a corporation."); Restatement (Second) of Conflict of Laws § 302 cmt. a (describing "mergers, consolidations and reorganizations" as the type of matters typically governed by the law of the state of incorporation).

### 1. Texas Law provides that Corizon Health is Exclusively Liable on Plaintiffs' Claims (Count III).

For over 30 years, Texas law has permitted divisional mergers that exclusively allocate assets and liabilities between the surviving entity and a new entity created by the transaction. Curtis W. Huff, *The New Texas Business Corporation Act Merger Provisions*, 21 ST. MARY'S L.J. 109, 110 (1989). Several other states have since enacted similar statutes. *See* 15 Pa. Cons. Stat. § 361; Ariz. Rev. Stat. § 29-2601; 6 Del. C. § 18-217(b)-(c). Any exclusive allocation of assets and liabilities through a divisional merger under the TBOC is fully enforceable under Texas law. *See, e.g.*, *1400 FM 1417 LLC v. CertainTeed Corp.*, 2022 WL 906192, at *2-3 (E.D. Tex. Mar. 28, 2022) (determining citizenship of corporation based on effect of divisional merger).

Importantly, the TBOC provides that the surviving or new entity "to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation," and "no other party to the merger . . . and no other new domestic entity. . . created under the plan of merger is liable for the debt or other obligation." Tex. Bus. Orgs. Code § 10.008(a)(3) and (4). Thus, under Texas law, CHS TX, an entity created by the Plan of Merger, cannot be liable for any obligations allocated to Corizon Health. *See id.*

In accordance with these provisions, once the Divisional Merger took effect, Corizon Health ceased to exist in its former capacity, and all of its assets and liabilities were allocated between Corizon Health or CHS TX in accordance with the Plan of Merger. As relevant here, Plaintiffs' contracts, and any potential liability associated with them, were allocated to Corizon Health—they were not allocated to CHS TX or YesCare.[19] CHS TX and YesCare did not exist prior to the 2022 Corporate Restructuring and therefore were never liable for Plaintiffs' claims. Rather, all liability in connection with Plaintiffs' lawsuit rested with Corizon Health before the

---

[19] *See* Petition ¶ 63.

Divisional Merger, and all liability in connection with Plaintiffs' lawsuit remained with Corizon Health after the Divisional Merger. It is therefore Corizon Health alone—not CHS TX (or YesCare)—that is the only possible defendant in this action.

### 2. Plaintiffs Fail to State a De Facto Merger Claim (Count IV).

The clear language of Tex. Bus. Orgs. Code § 10.008(a) (3) and (4) is alone sufficient to bar Plaintiffs' claims for successor liability through the Divisional Merger. However, each of Plaintiffs' individual theories of successor liability is also barred by Texas law, as "Texas strongly embraces the non-liability rule." *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 139 (Tex. App.—Houston [1st Dist.] 2000). Plaintiffs' first claim for successor liability (Count IV), based on de facto merger, fails for two separate reasons—because such a claim does not apply under Texas law, and because the Divisional Merger complies with all statutory requirements.

First, Texas law expressly bans "de facto merger" as a means to impose liabilities on an acquiring corporation. *See Shapolsky v. Brewton*, 56 S.W.3d 120, 138-39 (Tex. App.—Houston [14th Dist.] 2001); *cf. Texas v. American Tobacco Co.*, 441 F. Supp.3d 397, 458 n.42 (E.D. Tex. Feb. 25, 2020) (TBOC § 5.10(B) is "predecessor statute" to § 10.254 and interpreted "identically"). This ban is codified at Tex. Bus. Orgs. Code § 10.254, which applies to dispositions of assets (rather than mergers) but contains similar language to Section 10.008 explicitly blocking successor liability. Tex. Bus. Orgs. Code § 10.254 & Reviser's Notes ("Section 10.254 codifies for all domestic entities to which Chapter 10 applies that a disposition of assets will not constitute a merger or conversion such that the acquiring entity would be liable for the obligations of the transferring entity under the 'de facto merger' doctrine or otherwise unless the acquiring person expressly assumes an obligation."); *Lockheed Martin*, 16 S.W.3d at 135 n.6 (pointing out Texas statutory law eliminated the "de facto merger doctrine").

Second, the de facto merger doctrine does not apply because the 2022 Corporate

Restructuring was a statutory merger that complied with the TBOC. It was not a consolidation or merger in which two or more entities combine to form one surviving entity. Rather, two entities emerged, each with different assets, liabilities, and contractual relationships. The merger complied with all Texas statutory rules and the Texas Secretary of State accepted the merger filing. Plaintiffs do not allege otherwise. By definition, this statutory restructuring was not a "de facto" merger. *See In re Channel Clarity Holdings LLC*, 2022 WL 2811901, at *7 (Bankr. N.D. Ill. July 18, 2022) (de facto merger only applies when statutory formalities are not met).

### 3. Plaintiffs Fail to State a Claim of Mere Continuation (Count V).

Plaintiffs' second claim for successor liability (Count V), based on a theory of mere continuation, similarly fails. Texas courts have rejected the mere continuation doctrine as a basis for successor liability. *See Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758 (Tex. App.—Corpus Christi [13th Dist.] 1986) ("Certainly if the de facto merger doctrine is contrary to the public policy of our state, so must be the mere continuation doctrine.").[20] As with the bar on the de facto merger doctrine, this case law is rooted in Texas statute. *See Motor Components*, 338 S.W.3d at 204 (explaining that in codifying Section 10.254(b) the Texas legislature "rejected long ago the 'continuation' doctrine of implied successor liability[.]"). Accordingly, Plaintiffs have failed to state a claim for successor liability based on mere continuation.

### 4. Plaintiffs' "Intent to Defraud Creditors" Claim Cannot Provide the Basis for Successor Liability (Count VI).

Plaintiffs' third and final theory of successor liability (Count VI), alleging successor

---

[20] *See also Motor Components, LLC v. Devon Energy Corp.*, 338 S.W. 3d 198, 205 (Tex. App.—Houston [14th Dist.] 2011) (applying *Mudgett*); *see also TFT Galveston Portfolio, Ltd. v. C.I.R.*, 144 T.C. 96, 113 (T.C. Feb. 26, 2015) ("Texas courts have also refused to apply the doctrine of mere continuation."); *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 233 (S.D. Tex. 2011) ("[T]he Texas legislature has refused to recognize the theory that a successor corporation is a mere continuation of its predecessor as an exception to the traditional rule that a successor corporation does not assume the liabilities of a predecessor.").

liability through "intent to defraud creditors" is no more availing. As with claims for successor liability based on de facto merger and mere continuation theories, Texas courts have concluded that the Texas statutes do not provide for successor liability through a theory of fraud. In *Shapolsky v. Brewton*, for example, the court held that the relevant Texas statute in that case, the predecessor to Section 10.254(b), did not allow for successor liability based on allegations of fraud because that statute barred successor liability unless specifically authorized by another Texas statute, and no Texas statute so authorized. 56 S.W.3d at 138-39. Thus, in *In re 1701 Commerce, LLC*, the court explained that even if the plaintiff could state a claim for fraudulent transfer against the debtor, that claim could only serve as a basis for direct liability, not successor liability. 511 B.R. 812, 823-26 (Bankr. N.D. Tex. 2014); *id.* at 824 ("This court, like other courts, has been unable to locate a Texas statute providing that a fraudulent transfer creates successor liability.").

Plaintiffs have therefore failed to state a valid claim on any of their theories of successor liability. The court should dismiss their Counts IV-VI of the Petition.

## IV.     Plaintiffs Have Failed to State a Claim for Common Law Fraud or any Conspiracy Claim (Counts VII, IX, and XI).

Plaintiffs cannot sustain their remaining claims for direct liability against CHS TX: Count VII (Common Law Fraud and Conspiracy to Commit Common Law Fraud), IX (Conspiracy to Commit Fraudulent Transfer), and XI (Conspiracy to Engage in a Constructive Fraudulent Transfer).

First, Plaintiffs have not succeeded in stating their underlying allegations of fraud. "Civil conspiracy is not itself actionable in the absence of an underlying wrongful act or tort. If the underlying wrongful act alleged fails to state a cause of action, the civil conspiracy claim fails." *Park Ridge Assocs. v. UMB Bank*, 613 S.W.3d 456, 464 (Mo. App. E.D. 2020) (citations omitted).

Second, Plaintiffs' conspiracy claims fail for the independent reason that they depend on a

legal and logical impossibility: Corizon Health could not have conspired with CHS TX and YesCare when those companies were nonexistent or non-operational.

### 1.    Plaintiffs Fail to State a Claim for Common Law Fraud (Count VII).

Nine elements are essential to establish a common law fraud claim:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. banc 2010).

Plaintiffs fail to plead these elements. First, Plaintiffs' underlying common law fraud claim must fail because Plaintiffs did not sufficiently allege the first and second essential elements, a false representation. Corizon Health did not make any representation that can support an action for fraud.[21] Plaintiffs' alleged representation, that Corizon Health's online portal "approved" their claims, is merely a promise, whose later breach cannot prove that the intention of making such a promise was false. *Yerington v. Riss*, 374 S.W.2d 52, 58 (Mo. banc 1964) (fraud "cannot ordinarily be predicated on representations or statements which involve . . . things to be done or performed in the future."). Plaintiffs' argument would turn every breach-of-contract action into a fraud case.

Furthermore, Plaintiffs' common law fraud claim must fail because they do not plead *any* of the nine requisite elements of common law fraud with particularity. *See Drobnak*, 561 F.3d at 783 (stating that to satisfy the Rule 9(b) particularity requirement, "the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.") (citation omitted).

---

[21] Plaintiffs allege no fraudulent representations by CHS TX. Accordingly, liability under Count VII can attach only if they properly allege a conspiracy, which, as explained below, they have not done.

They do not allege with particularity who approved their claims, when those claims were approved, what representations were made to them in that approval process, whether the party approving the claim knew that Corizon Health might be unable to provide reimbursement, or the intent behind the approval of claims. *See Williams v. Belgrade State Bank*, 953 S.W.2d 187, 189 (Mo. App. S.D. 1997) (affirming dismissal of fraud claim where "Plaintiff's petition failed to state which individuals made representations and whether they had authority to do so.").

They also do not plead with particularity that they relied on these approvals in continued performance on the contract, nor that the approval of claims is the proximate cause of their injury. Plaintiffs allege that Corizon Health began to default in 2020 (without specifying a date), but that they continued to perform on the contract through 2021. *See* Pet. ¶¶ 72-74. From these threadbare allegations, it is unclear if they are alleging: (1) Corizon Health stopped paying claims entirely in 2020, in which case Plaintiffs have not alleged justified reliance on the approval of claims through 2021 (and therefore proximate cause); or (2) Corizon Health was still honoring payments through 2021 to the extent possible, in which case Plaintiffs gesture only at breach of contract, not deceptive intent. *See Colonial Bank v. Ratican*, 806 S.W.2d 460, 463 (Mo. App. E.D. 1991) (affirming dismissal of counterclaim where the party failed to plead with particularity reasonable reliance element); *Schauer v. Gundaker Movits Real Estate Co.*, 813 S.W.2d 112, 115 (Mo. App. E.D. 1991) (affirming dismissal of fraud claim for failing to plead proximate cause with particularity). Either way, they have not pled their theories of harm with particularity. This requires dismissal of their Petition. *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 537 (Mo. App. E.D. 2011).

### 2. Plaintiffs Fail to State a Claim for Fraudulent Transfer or Constructive Fraudulent Transfer (Counts VIII and X).

The essential elements of a fraudulent transfer are the conveyance or assignment of goods

or chattels with "an intent to hinder, delay or defraud creditors." *Higgins v. Ferrari*, 474 S.W.3d 630, 636 (Mo. App. W.D. 2015); § 428.024.1(1), RSMo 2022. A claim for constructive fraudulent transfer requires a transfer made or obligation incurred that has the economic effect of depriving a creditor of the ability to collect on a debt. § 428.024.1(2), RSMo 2022.[22]

Plaintiffs cannot succeed on their purported fraudulent transfer claim under Section 428.024.1(1). Though Plaintiffs claim the Divisional Merger constituted a "transfer" (Pet. ¶¶ 238, 251), the TBOC—which governed the Corporate Restructuring—is clear that the allocation of assets and liabilities through a divisional merger is not a "transfer." Tex. Bus. Orgs. Code § 10.008(a)(2)(C).[23] No "transfer" is fatal to Plaintiffs' claim. *Konopasek v. Konopasek*, 2022 WL 417071, at *4 (Mo. App. S.D. Sept. 13, 2022) (no fraudulent transfer claim with "transfer").

Furthermore, not only does the Petition fail to identify a fraudulent "transfer," but it also fails to allege with specificity facts, actions, or evidence that the 2022 Corporate Restructuring was intentionally fraudulent. *See Jennings*, 355 S.W.3d at 537. Notably, in alleging fraudulent transfer, Plaintiffs merely state without any supporting evidence that Corizon Health "demonstrated actual intent" to "hinder, delay, or defraud." Pet. ¶¶ 240-41. However, Plaintiffs have failed to provide sufficient supporting facts—let alone facts pled with the required particularity under Rule 9(b)—to support their allegations of intent, which is an essential element of their fraudulent transfer claim. *See Higgins*, 474 S.W.3d at 636. Section 428.024 applies the following factors for consideration of fraudulent intent:

> (1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation

---

[22] Counts VIII and X are alleged only against Corizon Health. However, because they call into question CHS TX's participation in the 2022 Restructuring, CHS TX argues for their dismissal here.

[23] "When a merger takes effect: . . . all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger ***without: . . . any transfer or assignment having occurred. . . .***" Tex. Bus. Orgs. Code § 10.008(a)(2)(C) (emphasis added).

was disclosed or concealed; (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Plaintiffs ignore most of these factors and allege none with the required particularity. Plaintiffs do not allege factors (2) through (4). Plaintiffs also do not allege factor (6), that Corizon Health (or any party) absconded; factor (7), that Corizon Health (or any party) removed or concealed assets; factor (10), that Corizon Health incurred a substantial debt shortly before or after the 2022 Corporate Restructuring; or factor (11), that Corizon Health transferred assets to a lienor.

As to factor (1), Plaintiffs allege the 2022 Corporate Transaction was to an insider, but support that claim with no facts as to who the insiders were except "beneficial owners." Pet. ¶ 71. Plaintiffs also allege that the 2022 Corporate Transaction removed "substantially all assets from Corizon Health," that it did not receive "reasonably equivalent" value in exchange, and that there was "inadequate or no consideration." Pet. ¶¶ 241 (corresponding to factors (5) and (8)). However, Plaintiffs allege no facts regarding the *net* consideration Corizon Health received following the 2022 Corporate Restructuring, aside from $1 million in cash. *See* Pet. ¶ 63. Notably, the Petition glosses over the secured liabilities from which Corizon Health was released, or its right to insurance policies and funding mechanisms. Ex. 1 at 6 ¶ 13; *id.* Schedule 3.01(b).

Similarly, Plaintiffs' allegation that Corizon Health was left without "substantially all assets" is meaningless where the Petition omits all allegations as to the value of its assets heading into the 2022 Corporate Restructuring. Without alleging these basic components of the Restructuring, the Petition lacks the particularity required for this Court to judge whether the

consideration provided may be inadequate, or to compare Corizon Health's net assets and liabilities following the Restructuring. Finally, Plaintiffs repeatedly allege Corizon Health is "insolvent" (*see, e.g,* Pet. ¶ 270) but do not plead the supporting facts with particularity. For example, Plaintiffs allege no facts indicating Corizon Health's current liabilities exceed its assets, the value of its rights to make claims on the Company's insurance policies, or its receivables. Ultimately, Plaintiffs' inability to plead the indicia of fraudulent intent means their fraudulent transfer claim is not viable. *See Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 390 (Mo. App. E.D. 2010) (dismissing claim of fraudulent transfer where the petition did not plead the badges of fraud with particularity); *Jennings*, 355 S.W.3d at 537.

The only facts Plaintiffs plead in any detail are those of the 2022 Corporate Restructuring itself. *See* Pet. ¶¶ 62-63. But the mere fact that Corizon Health entered the 2022 Corporate Restructuring does not support a claim for fraudulent transfer. Plaintiffs attack the Divisional Merger as inherently fraudulent (even though it was a lawful exercise of Texas law under the TBOC), but this is a policy argument—not a substitute for the particularity required to state an intentional fraudulent transfer claim under Rule 9(b). To be clear, in alleging that the Divisional Merger constituted a "fraudulent transfer," Plaintiffs ask this Court to invalidate the legal effect of the Texas statutes governing the Divisional Merger. No Missouri court has unwound a Texas merger in this manner, and Plaintiffs provide no justification for their extraordinary request.

Plaintiffs' constructive fraudulent transfer claim under Section 428.024.1(2) suffers from several additional flaws. Under Missouri law, a constructive fraudulent transfer claim is valid only where a party engaged in a transaction "(1) '[w]ithout receiving a reasonably equivalent value in exchange for the transfer' and (2) the debtor either (a) '[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in

relation to the business or transaction' or (b) '[i]ntended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.'" *Higgins*, 474 S.W.3d at 640 (quoting § 428.029(1), RSMo 2022) (upholding judgment finding no fraudulent transfer where reasonably equivalent value was paid, and the creditors' position was not undermined).  As previously outlined, the 2022 Corporate Restructuring involved reasonably equivalent value, because in exchange for certain assets being vested in CHS TX, CHS TX assumed nearly $100 million of secured debt, leaving Corizon Health with an enhanced ability to pay unsecured creditors.  Ex. 1 (Schedule 4.01(a)).  Among other benefits, the 2022 Corporate Restructuring also allocated $1 million in cash to Corizon Health and provided up to $15 million for unsecured creditors of the Company, $4 million of which was specifically allocated to Corizon Health's creditors.  Plaintiffs have no basis to claim that the transaction lacked a reasonably equivalent value, and do not allege sufficient facts to allow an inference otherwise.

### 3.    Plaintiffs' Conspiracy Claims Fail (Counts VII, IX and XI).

Plaintiffs cannot succeed on their conspiracy allegations (Counts VII, IX, and XI) because two of the three alleged "conspirators" did not exist at the time of the alleged torts.  Furthermore, even if all three parties were in existence (and they were not), Plaintiffs defeat their own conspiracy argument by alleging that the three companies are alter-egos, meaning that the supposed conspiracy would not involve two or more people as required by Missouri law.

"A claim of conspiracy must establish: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged." *Creative Walking, Inc. v. American States Ins. Co.*, 25 S.W.3d 682, 688 (Mo. App. E.D. 2000) (citations omitted).  By definition, a party cannot conspire with itself.  *State v. May*, 43 S.W. 637, 642 (Mo. 1897).  The formation of the conspiracy must predate the underlying action.  *See, e.g, Flittie v. Solem*, 775 F.2d 933 (8th Cir.

1985). In addition, a corporation cannot be held liable for a tort committed prior to its formation since it would not be "legally capable of committing the tort." *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11-cv-02861-SC, 2013 WL 2386635, at *6 (N.D. Cal. May 30, 2013) (citation omitted). Furthermore, "an identity between agent and principal leads to a legal impossibility in the context of conspiracy. Two entities which are not legally distinct cannot conspire with one another." *Creative Walking*, 25 S.W.3d at 688.

Plaintiffs' conspiracy claims must fail as only Corizon Health existed at the time of the alleged torts. Plaintiffs allege that Corizon Health, CHS TX, and YesCare conspired together to render Corizon Health insolvent. However, it was not until the May 3, 2022 Divisional Merger that CHS TX was formed, with all assets and liabilities allocated at its moment of incorporation. *See* Pet. ¶ 63(d). CHS TX could not conspire with Corizon Health regarding the Divisional Merger, as CHS TX did not exist until the Merger's completion. Similarly, it was not until after the Divisional Merger that YesCare acquired CHS TX, thereby becoming an operating corporation. Plaintiffs have provided no allegations regarding of YesCare's actions prior to the Divisional Merger, nor any allegations of its involvement in any decision-making in the lead-up period.

Moreover, even if all parties existed at the time of the alleged tort, Plaintiffs' conspiracy claims are inconsistent with their successor liability claim, as conspiracy requires two parties under Missouri law. *Creative Walking*, 25 S.W.3d 682 at 688. Here, Plaintiffs specifically state that YesCare and CHS TX "are alter–egos, successors, or mere continuations of Corizon Health" while simultaneously alleging that the three parties committed conspiracy. Pet. ¶ 12. Plaintiffs' conspiracy claims thus undermine their own position.

## **CONCLUSION**

Thus, the Court should dismiss the Petition as to CHS TX with prejudice.

25

Dated: January 6, 2023

Respectfully submitted,

**DOWD BENNETT LLP**

*/s/ Philip A. Cantwell*
Philip A. Cantwell #65505
Adam J. Simon #72956
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
pcantwell@dowdbennett.com
asimon@dowdbennett.com

*Attorneys for CHS TX, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023 the foregoing was filed electronically with the

Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel

of record.

By: *Philip A. Cantwell*